PEOPLES BANK v. I. S. WEST, JR.

67  729|
71  679|

1. ATTACHMENT.  *Void levy on land.*  *Code* 1880, §§ 2424, 2425.

Under § 2424, code 1880, in case of the attachment of occupied land, if the officer serving the writ does not "go to the house or land of the defendant, or to the person or house of the person in whose possession the same may be, and then and there declare that he attaches the same, at the suit of the plaintiff," the levy is void, and no lien will be acquired. The officer must make a "full return of all his proceedings," and he must show conformity, in substance at least, with the statutory requirements. *Sherman* v. *Bank*, 66 Miss. 648.

2. SAME.  *Creditors bill.*  *Code* 1880, § 1845.  *Prior lien acquired.*

A creditor who after such invalid levy files a bill to set aside a fraudulent conveyance by the defendant, and thereby, under § 1845, code 1880, acquires a lien on the land, has priority over the attaching creditor.

3. SAME.  *Judgment in attachment.*  *Lien does not relate back.*  *Collateral attack.*

This is true, although such insufficient levy is noted in the return, and the defendant is personally summoned and appears at the return term and consents to a judgment condemning the land under the attachment, the creditors bill being filed before such judgment. Without a levy, there is no lien, and the judgment cannot retroactively create one to cut out intervening rights. Even on a collateral attack, the lien creditor may show that there was no valid levy.

4. CLOUDS ON TITLE.  *Bill to remove.*  *Complainant's right.*  *Common source of title.*

One seeking cancellation of a title as a cloud upon his own must show that he is the owner of the land ; but where both parties claim from a common source, this is an admission that the title was in such source, and if the complainant shows that he has the title derived therefrom, he is entitled to a decree, without further proof of title.

5. SAME.  *Remedy by ejectment.*  *Will not debar complainant.*  *Code* 1880, § 1833.

Under § 1833, code 1880, on a bill to remove clouds, where the complainant shows a perfect title, legal or equitable, the court will not refuse to cancel the adversary title on the ground that it is in form a legal one, or because of its apparent strength or weakness, or because the complainant has a remedy at law by ejectment.

FROM the chancery court of Harrison county.

HON. SYLVANUS EVANS, Chancellor.

The opinion states the case.

*E. Howard McCaleb* and *E. J. Bowers,* for the Peoples Bank, appellant,

Filed an elaborate brief, making, as to the questions decided by the court, the following points :—

1. The levy in the attachment suit of West was void and created no lien. *Sherman* v. *Bank,* 66 Miss. 648.

2. The creditors bill of the Peoples Bank was filed on July 1, 1884, after the attempted levy, but before the judgment in the attachment suit. Complainant acquired a lien from the date of the filing of the bill. Code 1880, § 1845. At that time West had no lien, and consequently the lien acquired by the filing of the creditors bill is superior.

3. The court below held that as there was no proof that Carriere ever owned the property in controversy, neither West nor the bank established a perfect title. This was error. Both parties claimed from Carriere as a common source of title. *Gaines* v. *New Orleans,* 6 Wall. 643.

4. The court below held that appellant had a full and complete remedy at law by ejectment, and that there were no facts which would give the chancery court jurisdiction. In this we maintain that the learned chancellor was clearly incorrect. The appellant was not a party to the attachment suit, and was therefore not bound by the judgment therein. It was competent to resort to a court of equity to set aside the lien claimed under this judgment. *Smith* v. *Gettinger,* 3 Ga. 140 ; *Whipple* v. *Cass,* 8 Iowa, 126 ; *Hale* v. *Chandler,* 3 Mich. 531 ; *Reed* v. *Ennis,* 4 Abb. Prac. R. 393.

The bank proceeded in the chancery court to set aside the fraudulent conveyance of Carriere, and that court had jurisdiction to give full relief, including the cancellation of any adverse title. This jurisdiction may be enforced either by a supplemental bill, or by an original or cross bill as against any one asserting such adverse rights. The jurisdiction of the chancery court is never divested until the fruits of its decrees are obtained by the successful party. *Riggs* v. *Johnson County,* 6 Wall. 166.

*Nugent & McWillie* and *Percy Roberts,* for appellee, West.

1. The main question is as to the validity of the West attachment,

and whether it is so far invalid as to make it obnoxious on a collateral attack. Section 2476 of the code, provides that the attachment law shall be construed in the most liberal manner. Assuming that the land in controversy was occupied, § 2424 of the code required that the officer having the writ should go to the defendant, or to the person or house of the person in possession, and declare that he attached the land. It is better that the return should be in the language of the statute itself, because then it would show that the officer conformed to the law; but this is the only reason, according to a recent decision of this court. Suppose the return was false in fact, would the lien be fixed beyond control as to an intervening creditor? Such creditor cannot attack the return collaterally. Looking to the return in question, we find that the officer delivered a copy of the writ to the defendant, and therefore he went to the person in possession. Furthermore, he "levied" the writ upon the land. This imports that he *did* something in making the levy, and the fair intendment is that, contemporaneously with delivering a copy of the writ to the debtor, he made the declaration required by the statute; otherwise the construction is not liberal.

In the case of *Sherman* v. *Bank*, 66 Miss. 648, it was alleged and proved that the land was occupied. Besides, the return in that case differed from that in *Saunders* v. *Ins. Co.*, 43 Miss. 583, where the return was upheld. In that case the return employed the word *levy* instead of the word *attached*, implying with it a recital of notice to the person in possession. In the case at bar, Carriere had conveyed the land to his wife and children, but he was in possession. Certainly the officer saw him in delivering a copy. It is not affirmatively shown that he was at home when the officer went to him, but that was not necessary. The only possible objection to the return is that it does not show that the officer declared the levy in Carriere's presence. Such declaration was not shown in the case of *Saunders* v. *Ins. Co.*, but it only appeared that the tenant in possession was *notified* of the levy. In this case Carriere was served with a copy of the attachment which was to be levied on his property. He owned none other than that in controversy, and he defended the suit supposing the levy was a valid one. Was not

the delivery of the copy under these facts virtual notice of whatever might appear in the return upon the writ? The defendant was notified of the attachment at the suit of a particular plaintiff, and there was only this property to be attached. The officer could have gone to the house in the absence of the defendant and declared a levy, and the defendant would not have had as much actual notice as is shown by this return, and yet such a levy would have been unquestionably within the requirements of the statute. It would seem that where the officer goes to the defendant and serves him with a copy of the writ that it is unnecessary to show affirmatively in the return that he then declared a levy, if his return shows in addition to delivering the copy, that he " levied" on the land.

2. The law as to the right of a third person to assail in a separate suit in another court the validity of a judgment rendered by a court of general jurisdiction, on the ground that there was a defect in the levy of an attachment, or rather in the return of the officer, is correctly laid down in the case of *Cox* v. *White*, 2 La. 422. There it was held that the judgment must be considered as *res judicata* between the parties, and as having settled all the disputes in relation to the property attached. All defects in the commencement and prosecution of the suit must be held cured by the judgment as to all parties who had no vested rights in the property attached at the time of rendering the judgment. This general doctrine has more than once been upheld by this court as applied to the service of process. The court has held that if service was made, no matter how defective, and no objection arising on such defect was urged by the defendant, it would give jurisdiction to the court, and the final judgment rendered thereon would be proof against the attack of third persons. The same doctrine must obtain in respect to defects in the levy of an attachment. Under § 1493 of the code, the circuit court in which this judgment was rendered is a court of general jurisdiction, and the chancery court has no power to interfere with its judgment in a case like this.

The correctness of the appellant's contention depends entirely on the nature and character of the matter set up in the cross-bill

as to the sufficiency of the levy, and we submit that this is a matter as to which the chancery court is without jurisdiction.

COOPER, J., delivered the opinion of the court.

The controversy in this cause is between I. S. West, Jr., and the Peoples Bank of New Orleans, each claiming to be the owner of the land described in the pleadings, by title derived under judicial proceedings against the former owner, Charles J. Carriere. On the 25th of June, 1884, West sued out a writ of attachment returnable to the circuit court of Harrison county against Carriere, as a non-resident. To this writ the sheriff of Harrison county made return, as follows : " Executed within process this 26th day of June, 1884, by levying upon the following described real estate situated in Harrison county, Mississippi, as that of C. J. Carriere, deft., to wit, [describing land by metes and bounds]. Further executed by handing to C. J. Carriere, deft., in person, a true copy of within process." This writ was returnable to the November term of the circuit court, and at that time the defendant appeared and pleaded in abatement to the attachment. At a subsequent term of the court, the defendant withdrew all defense, and judgment by consent was rendered in favor of the plaintiff, and the land attached directed to be sold. Under this judgment a writ of *venditioni exponas* was issued, and the property described in the writ was sold, and the plaintiff in attachment, West, became the purchaser.

On the 1st of July, 1884 (after the levy of the attachment, and before the return-day of the writ), the Peoples Bank exhibited its bill in the chancery court of Harrison county against Charles J. Carriere and Mamie Adele Carriere, his wife, and against the infant children of the said Charles J. Carriere, in which it was averred that on the 30th day of May the said Charles J. Carriere was indebted to said bank in a large sum ; that he was then insolvent, and, for the purpose of defrauding his creditors, on that day made a voluntary conveyance of the property here in controversy to his said wife and infant children. The property was described in said bill, and, under §§ 1843, 1845, code 1880, a lien was fixed by the filing of the bill against the property proceeded against. This pro-

ceeding resulted in a final decree in favor of the bank, cancelling the conveyance from Carriere to his wife and children, and subjecting the land to sale for the payment of the complainant's debt. Under this decree the land was sold by a commissioner of the chancery court, and at this sale the Peoples Bank became the purchaser.

It will be seen that both parties to the present litigation claim to have secured the title of Charles J. Carriere, West claiming title under the attachment suit, and the bank under the chancery proceeding. The regularity and validity of the chancery suit of the bank against Carriere and others is not controverted, and it is conceded by West that the title of Carriere passed under the sale thereunder, unless he (West) secured a title under his attachment, and the sale under the judgment rendered therein. The present suit was commenced by West, who avers that he is the owner and in possession of the land, and that the claim of title asserted by the bank casts a cloud and suspicion on his title; wherefore he prays its cancellation. The bank answered the bill, and also exhibited a cross-bill, by which it seeks to cancel the title of West as a cloud upon its title. On final hearing, the court dismissed the original and cross-bills, and both parties appeal.

Two questions are presented by the record: 1. In whom is the title of Carriere vested? 2. Is the holder of that title entitled to a decree cancelling that of his adversary? The cross-bill exhibited by the Peoples Bank avers that, at the date of the levy of the attachment sued out by West against Carriere, the lands in controversy were not wild, uncultivated or unoccupied, but that they were then occupied as a residence by Carriere and his family. This allegation of the cross-bill is not denied, and its truth must be accepted as established, if it be competent to aver the fact in this proceeding.

Section 2424 of our code prescribes how writs of attachment shall be levied upon real estate. It provides that, " every writ of attachment shall be executed in the following manner: that is to say, in case of a levy on real estate, the officer shall go to the house or land of the defendant, or to the person or house of the person

in whose possession the same may be, and then and there shall declare that he attaches the same, at the suit of the plaintiff in the writ named. But, in the event the land is wild, uncultivated or unoccupied, a return upon the writ, by the proper officer, that he has attached the land, giving a description thereof by numbers, metes and bounds, or otherwise, shall be a sufficient levy, without going upon the land." Section 2425 declares that, "the officer serving an attachment shall make a full return thereon of all his proceedings on or before the return-day of the writ."

The contention of the bank is that the levy of the writ of attachment, as shown by the return of the officer, was invalid, and fixed no lien upon the land; that the only act done by the officer was to note the levy on the writ; and, while this would have been sufficient to fix the lien if the land had been "wild, uncultivated or unoccupied," it had no effect upon the property in controversy, since it was at the time of the levy occupied by the defendant in attachment and his family. West responds to this assault by replying that the defect in the levy, if any exists, is a mere irregularity which might have been and was waived by the defendant; and again, that, in this collateral controversy, it is not competent for the bank to attack the validity or effect of the judgment in the attachment suit, which, as he contends, adjudicated the validity of the levy and condemned the land to sale for the debt found due to him.

We have examined many cases touching the position assumed by counsel for West, and, though the rule is very generally declared to be that mere irregularities in the proceedings cannot be availed of by third persons, or by the defendant himself in a collateral controversy, it is not clear what defects are to be considered as irregularities only, within the rule announced. The earlier South Carolina reports contain many cases in which the distinction is drawn between those omissions or defects which are considered irregularities only, and those which are held to vitiate the proceedings, and entitle third persons to contest the validity of the judgment.

It has been held in that state that the following defects are irregularities only, and do not annul the judgment: An omission

by the plaintiff to make affidavit of his debt. *Foster* v. *Jones*, 1 McCord, 116. Omitting to give requisite bond. *Chambers* v. *McKee*, 1 Hill, S. C., 229. Giving the attachment bond in double the debt, instead of double the damages or sum sued for. *Chamberford* v. *Hall*, 3 McCord, 345. ·The omission of the magistrate to return into court the attachment bond. *Kincaid* v. *Neall*, Ib. 201.

. On the other hand, it has been decided in the same state that the following defects are fatal to the validity of the judgment, and that junior attachers may set aside the prior attachment, and subject the property to their demands : An illegal service of the writ. *Byne* v. *Byne*, 1 Rich. Law, 438 ;· *Gardner* v. *Hust*, 2 Ib. 601. Suing out a writ against one not liable to that process. *Weyman* v. *Murdock*, Harp. 125. That the cause of action is not suable by attachment. *Sargeant* v. *Helmbold*, Ib. 219. A writ issued by one partner against another on a partnership demand. *Rice* v. *Beers*, 1 Rice Dig. 75. That the fund has not been attached. *Burrell* v. *Letson*, 1 Strob. 239.

In Louisiana it has been decided that a junior attacher cannot intervene to allege informality in the senior proceedings consisting in a failure of the first attacher to make the affidavit required by law, the affidavit being a substantial compliance with the statute. *Clamageran* v. *Bucks*, 4 Mart. (N. S.) 487.

It seems, however, to be very generally held that a junior attacher, or other third person, may show that the officer failed to make a valid levy upon the property attached. In *Bank* v. *McDonald*, 46 Mo. 31, after the return-day of an execution, the ·creditor sued out a writ of garnishment (not being permitted by the statute so to do), and· the garnishee appeared and answered, and submitted to judgment. Another creditor subsequently sued out his writ of garnishment and served it upon the same garnishee. It was held that he could show the invalidity of the first garnishment, and the fund was directed to be paid to him.

In the following cases junior attachers have been given priority over prior attachers because of the defects named in the first proceedings : In *Stone* v. *Miller*, 62 Barb. 430, because the officer levy-

ing the first writ failed to leave a copy of the writ with the party in whose possession the goods were found, as directed by statute. In *Lindau* v. *Arnold*, 4 Strob. 290, because a domestic attachment had been issued for $56, when the statute authorized such attachments to run for not more than $20. Where the debt of the first attacher was not due at the time of the commencement of his action. *Henderson* v. *Thornton*, 37 Miss. 448; *Walker* v. *Roberts*, 4 Rich. Law, 561. Where the officer fails to levy the writ upon real estate in the manner required by law, as by failing to give the defendant a copy of the writ, or to go upon the land, or to levy in the presence of witnesses. *Schwartz* v. *Cowell*, 71 Cal. 306; *Watt* v. *Wright*, 66 Ib. 202; *Tiffany* v. *Glover*, 3 G. Greene, 387; *Sherman* v. *Bank*, 66 Miss. 648. Because the officer failed to take possession of personal property levied on. *Gates* v. *Flint*, 39 Miss. 365.

Our own case of *Sherman* v. *Bank*, 66 Miss. 648, might have been sufficient for the decision of this question, but in that case there was no service upon or appearance by the defendant, and it is contended here by counsel for West that the appearance and confession of judgment by Carriere was a waiver of any defect appearing in the levy. We have therefore cited other cases to show that such appearance and waiver cannot cure defects of this character. The point here made was insisted upon in the case of *Gardner* v. *Hust*, 2 Rich. Law, 601, and the court said: "Such illegal service creates no lien in cases of attachment. If there was no lien, then the confession of judgment by Hust to Miller is not the revival of a lien by waiving an irregularity, but the creation of a lien by relation back to the illegal service. If the levy had been set aside at the instance of Hust, and it had been a mere irregularity, then it may be that, as between him and Miller, he might, by confessing judgment, waive the irregularity and remove the objection to the levy. He, at least, would not, after the confession, be allowed to question the regularity of the previous proceedings. But the doctrine contended for in this case, that such waiver, by relation back, can defeat rights which had accrued in the meantime, has no support from any case or any legal analogy. In this view

67 Miss.—47

of the case, Miller's confession of judgment can only (as to Gardner) be regarded as a common confession, and has no lien except that created by the *fi. fa.*, which was not lodged until October. In the meantime Gardner had acquired a lien by his attachment."

It will be noted that our statute requires the officer to return into court the writ, with a full return thereon " of all his proceedings." The officer here returned that he levied the writ upon the lands described, and executed it personally upon the defendant, and gave him a copy. It is not stated that the officer went upon the lands, or to the house or person in whose possession they were, and then and there declared the levy of the writ. It does not appear that the defendant was notified that a levy had been made. All that was done was to endorse a levy of the land upon the writ, and to serve the defendant with a copy of the writ. We must assume that the officer's return contains a full statement of " all that he did in the execution of the writ," and, if this be true, no levy was made upon the land. It is by the levy that the lien arises, and that is not a legal levy which does not conform, in substance at least, to the statutory requirements. The judgment of the court cannot create a lien operating retroactively so as to cut out intervening rights of others; it can only give effect to a lien already secured by conformity to the law by which it is provided. The Peoples Bank, by the institution of its suit in chancery, secured a lien upon the property at a time when no sufficient levy had been made of the attachment writ, and the title derived by it under the decree in that cause related back to the inception of the lien. The consequence is that the bank, and not West, secured the title of Carriere.

The remaining question is whether the bank is entitled to have cancellation of the title of West in this proceeding. West by his bill avers that the title to the property was in Carriere at the time his writ of attachment was issued and served. The chancellor dismissed the bill of West, because he thought the children of Carriere (grantees in the conveyance made by Carriere on the 24th of May, 1884), were necessary parties to the bill. He then dismissed the cross-bill of the Peoples Bank, because the complainant therein had a full and complete remedy at law to recover the property

described, and because it denied the title to have been in Carriere at the time of the levy of the writ of attachment. In this we think the court erred. It is true that the answer denies the title to have been in Carriere, but the effect of this denial is qualified and explained by the statements of the answer and cross-bill, in which it clearly appears that the conveyance of May 24th, which had been cancelled at the suit of the bank, was the foundation of the denial. Manifestly the whole controversy between the bank and West is as to which party acquired the title of Carriere. Both parties admit that he once had title, and both claim to have derived that title. It is well settled in this state that one who seeks cancellation of a cloud upon his title must show that he is the owner of the land in controversy. But, where both parties claim under a common source, there is an admission by each that the title was in that source, and this is sufficient to uphold the right of that party who proves that he has secured that title to the relief of cancellation. If the bank were suing West in ejectment for the recovery of the land, it might show that he claimed under Carriere, and then that it was the true owner of his title. This being proved, a recovery would be had by the bank, without any other proof of title in Carriere. *Gordon* v. *Sizer*, 39 Miss. 805 ; *Smith* v. *Otley*, 26 Ib. 291 ; *Griffin* v. *Sheffield*, 38 Ib. 359.

Nor do we think that the cross-bill should have been dismissed on the ground that the complainant therein might by ejectment try the validity of the title of West, who is in possession of the land. The right is conferred by statute upon the real owner, "whether such real owner be in possession, or be threatened to be disturbed in his possession, or not," to have cancellation decreed, of any conveyance or evidence of title, or any claim or pretense of claim of title, " which may cast doubt or suspicion on the title of the real owner." Code 1880, § 1833. It has sometimes been declared by the court that the jurisdiction conferred upon courts of chancery should not be exercised to try conflicting legal titles. In *Huntington* v. *Allen*, 44 Miss. 663, many expressions of this sort were used, but the court finally disposed of the case by doing precisely what it declared should not be done—putting its conclusion

upon the invalidity of the complainant's title. But we are not aware of any case in which, a clear legal or equitable title being shown in the complainant, the court has declined to cancel the adversary title or claim on the ground that it is in form a legal title, or because of its apparent strength or weakness. In *Glazier* v. *Bailey*, 47 Miss. 396, the court refused to intervene because there was already pending an action of ejectment in which the titles of the parties could be tested. We know of no line by which the jurisdiction of the court is limited other than that prescribed by the law which confers it. When the complainant shows a perfect title, legal or equitable, and the title of the defendant is shown to be invalid, it is, in the nature of things, a cloud upon the title of complainant, and should be cancelled.

*The decree dismissing the cross-bill of the Peoples Bank must be reversed. A decree will be entered here, granting the relief prayed by it, and cancelling the title derived by West under his attachment proceeding as a cloud upon the title of the bank.*