[Civ. No. 15312.   First Dist., Div. Two.   July 21, 1953.]

YOUSUF ZAINUDIN et al., Respondents, v. GOLDIE MEIZEL, as Administratrix, et al., Appellants.

Herman Daniel Gill and John F. O'Sullivan for Appellants.

Joseph F. Mannion for Respondents.

NOURSE, P. J.—Plaintiffs sued for damages for fraudulent representations leading to their purchase from certain named defendants of a leasehold in a hotel. At the trial plaintiffs dismissed as to three of the named defendants and a nonsuit was granted as to one other. On a trial to a jury a verdict was returned against the four remaining defendants for $24,000 compensatory damages and $5,000 punitive damages. Two of these defendants, Meizel and Cook appealed. Pending the appeal the defendant Meizel deceased and his administratrix was duly substituted and the same counsel appears for her.

A brief outline of the proceedings shows that prior to the trial of this action two of the defendants brought suit against the plaintiffs herein for cancellation of the agreement of sale which is the subject of this action, and to quiet title to the hotel furniture. The plaintiffs herein did not set up their cause

of action as a defense to that suit and judgment was taken against them by default. In the present action the defendants herein set up those circumstances in a special plea contending that the present claim of these plaintiffs is barred since it was not pleaded as a counterclaim to the suit for cancellation of the agreement, and that the whole matter is res adjudicata. A demurrer to this special plea was sustained and the present action went to trial without that special defense. The correctness of this ruling presents the only debatable issue on this appeal.

On the question of res adjudicata appellants cite *English* v. *English*, 9 Cal.2d 358 [70 P.2d 625, 128 A.L.R. 467]; *Thompson* v. *Modern School of B. & Correspondence*, 183 Cal. 112 [190 P. 451]; and *Sutphin* v. *Speik*, 15 Cal.2d 195 [99 P.2d 652, 101 P.2d 497], all of which are contrary to the point raised. Appellants then argue that these cases are unsound because they did not consider the effect of section 439, Code of Civil Procedure. No further argument is made on the point and we may assume that it has been abandoned as it is wholly without merit.

The question of the application of section 439, Code of Civil Procedure presents the only difficulty. The section reads:

"If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor." ▆ The purpose of the section is clearly explained in *Ward* v. *Goetting*, 44 Cal.App. 435, 438 [186 P. 640], where the court said: " 'A counterclaim, when established, must in some way qualify or defeat the judgment to which a plaintiff is otherwise entitled.' 'It must be something that resists or modifies the plaintiff's claim.' (*Leavenworth* v. *Packer*, 52 Barb. (N.Y.) 132.) And in *Mattoon* v. *Baker*, 24 How. Prac. (N.Y.) 329, the court, in discussing the subject, says: 'A counterclaim to be available to a party must afford to him protection in some way against the plaintiff's demand for judgment, either in whole or in part. It must, therefore, consist in a setoff or claim by way of recoupment or be in some way connected with the subject of the action stated in the complaint. It must present an answer to plaintiff's demand for relief. . . . It must, therefore, contain not only the substance of what is necessary to sustain an action in favor of defendant against the plaintiff, but it must also operate in some way to defeat in whole or in part the plaintiff's right to

recover in the action. An answer which does not meet this requirement is insufficient, whether regarded as a defense or a counterclaim.' ''

Another element in which the authorities are in accord is that the counterclaim must tend ''to diminish or defeat'' the claim for damages alleged in the complaint. (See *Case* v. *Kadota Fig Assn.*, 35 Cal.2d 596, 604 [220 P.2d 912]. None of these elements are present here. The plaintiffs commenced this action against eight defendants to recover damages for fraud. Before the action was tried two only of the defendants commenced an action in equity to quiet title to personal property which had been part of the fraudulent sale. The suit for damages did not and could not qualify or defeat the plea to quiet title to the personalty since the contract of sale had been abandoned. That suit did not seek a money judgment for damages, or on any other basis. The claim for damages for fraud could not afford the respondents herein any protection against the suit to quiet title to the personal property. Assuming, as that is the only way in which the appellants can find a shadow of an argument, that the word ''maintain'' found in the code section does not include a counterclaim pleaded in an action already on file, we are nevertheless impelled to hold that a ''counterclaim'' means in effect a plea that will defeat plaintiff's claim in whole or in part. We may also suggest that if appellants' point is good here the rule they advocate would have defeated their suit to quiet title which was brought long after this action for fraud. The word ''maintain'' as used in the section has not been definitely defined. It has been used to signify ''to begin,'' to ''carry on,'' to ''commence and prosecute to a conclusion.'' (*County of Los Angeles* v. *Craig*, 52 Cal.App.2d 450, 452 [126 P.2d 448].)

But we do not deem it necessary at this time to seek a precise definition of the word ''maintain'' as used in the code section. Following the accepted rule of statutory construction that the court should seek the purpose and intent of the Legislature, it requires no imagination to see that here the Legislature intended to require the parties to consolidate their controversies on all claims ''arising out of the [same] transaction'' and thus avoid delay and a multiplicity of suits. The distinction between a counterclaim (§ 439) and a cross-complaint (§ 442) is well known. It is only when the second claim is a claim for money which may affect or defeat

the plaintiff's claim for money that the term "counterclaim" is applied.

Here the appellants' suit to quiet title to personalty could not have been "offset" in any degree by respondents' suit for damages for fraud. For that reason it would not have been a proper counterclaim in the suit to quiet title.

Appellants do not question the sufficiency of the evidence to support the finding that the sale was the result of fraudulent representations. The hotel was located on lower Market Street in the poor section of San Francisco. It was in a badly run down condition without sufficient baths, toilets or room furniture. Respondents were shown one or two rooms which were fairly furnished and were told that all the other 143 rooms were similarly furnished. They were told that it was amply supplied with adequate bathroom and toilet facilities. It contained five bathrooms and 12 toilets. They were told that it was filled to capacity with permanent guests. It was occupied entirely with refugees brought in from Shanghai, China, who were all transients. A few days after the sale defendants moved these guests to another hotel, leaving the respondents with empty rooms.

We anticipate that criticism will be made of the foregoing statement as to the character of the guests in the hotel. Counsel for appellants have carefully avoided a statement of the evidence upon which the jury's verdict rests—on the theory we assume, that the evidence shows such a gross and unconscionable fraud on the part of appellants that it would be better to evade the true story of the case and rely on technical objections to the procedure. Respondents state as fact that: "In the autumn of 1947, large numbers of 'refugees' were arriving at the port of San Francisco from Shanghai, China, while en route to predetermined destinations throughout the United States. While en route, their movements were controlled by a central agency which arranged for their stay at the Sunset Hotel as well as for payment for accommodations furnished. The combination of circumstances just referred to enabled appellants to literally 'herd' the 'refugees' into the Sunset Hotel and thereby to obtain an income from said hotel for a few months in the autumn of 1947 which was out of all proportion to what the hotel would normally produce."

In their reply brief the appellants contend that these facts were not in evidence. Parts of the statement were matters of common knowledge; parts were in evidence; parts were suppressed by objections of appellants. It would serve no

270

useful purpose to break down the statement. ■ The arrival in San Francisco of refugees from foreign parts was a matter of common knowledge. Whether these refugees were Jewish people from Germany, as respondents contend, middle Europeans, or Orientals has no bearing on the case. The facts which respondents sought to prove were that appellants were engaged in meeting these refugees and 'herding' them into a hotel for the purpose of building up the occupancy to facilitate a sale, and that was their general practice. ■ When the court sustained appellants' objections to such questions it committed error, because it was proper for respondents to show, in support of their claim for punitive damages, that the transactions of the appellants were not only fraudulent in themselves, but that they were deliberate, intentional, and vicious.

■ Respondents have cited cases from other jurisdictions holding that when a party has prevented proof of a fact by his erroneous objection and an erroneous ruling of the trial court, he will not be permitted to take advantage of his own wrong in the reviewing court but the latter court will assume that the fact was duly proved. (See *Boatmen's Bank of St. Louis* v. *Fritzlen,* 221 F. 145, 149 [137 C.C.A. 45].) In the absence of authority in our own jurisdiction we are prone to adopt this rule which at first glance appears somewhat drastic.

But the whole controversy is unimportant and without any real bearing on the issues involved. If there was no proof of these outside activities of the defendants (and it must be borne in mind that there were other defendants who are not appealing) then there was no evidence of any character which would support appellants' plea that the verdict for punitive damages was the result of passion and prejudice. That part of the verdict rests upon the sound ground that the defendants—all of whom were experienced real estate operators—took an unfair and unconscionable advantage of two uneducated and inexperienced clients.

Expert witnesses were called by both sides to testify to the value of the leasehold. Their estimates ranged from $1,000 to $10,000. Proof was made that respondents made a down payment of $15,000 and additional installment payments, making an overall outlay of $29,000. The jury's award of $24,000 as actual damages was fully supported by the evidence. However the point is not properly presented. ■ Since the question raised is the sufficiency of the evi-

dence to support the verdict the appellants must practically demonstrate that there is no competent evidence to support the verdict. Their mere recital of evidence favorable to them is not sufficient. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].)

Appellants' argument, without any reference to the record, that the portion of the verdict awarding punitive damages was the result of passion and prejudice is merely the conclusion of counsel and does not require treatment.

The same may be said as to their statement that their motion for a nonsuit should have been granted. ▮ The respondents had proved that they were induced by fraudulent misrepresentations to pay an exhorbitant price for the leasehold interest in a dilapidated and practically unoccupied old hotel. On such showing they were entitled to damages for the fraud and the amount of the award was clearly within the judgment of the jury.

Judgment affirmed.

Dooling, J., concurred.

A petition for a rehearing was denied August 20, 1953, and appellants' petition for a hearing by the Supreme Court was denied September 17, 1953.