320 P.2d 374

John T. LANEHART, Appellee,

v.

Amanda Stewart RABB, Charlie Stewart and Bertha Stewart, Frances Lanehart Moore, Joan Lanehart Bevan, Weldon L. Marinell Lanehart Dorsey, Melvin Clyde Lanehart, Alleen Lanehart, Wilma Sue Lanehart Phillips, Hattie Lanehart Thompson, Mary L. Duty, Mary Lanehart, Bennie Don Lanehart, Darrell Gene Lanehart, Joy Doyle Lanehart, heirs of B. T. Lanehart, Deceased, and Addie Stewart Vessels, Beatrice Lanehart Stark, Agatha Lanehart Sevier and Annie Lanehart Mullenax, Appellants,

Argo Oil Corporation, Third Party Defendant.

No. 6249.

Supreme Court of New Mexico.

Dec. 26, 1957.

Rehearing Denied Jan. 31, 1958.

G. T. Hanners, Lovington, Neal & Neal, Edwards & Reese, Hobbs, Robert W. Ward, Merrill L. Norton, Lovington, for appellants.

Heidel & Swarthout, Lovington, for appellee and third party defendant.

GALLEGOS, District Judge.

In August, 1955, John T. Lanehart filed suit to quiet title alleging that he was the

owner of an undivided ½ interest in the oil, gas and other minerals in the E½ NE¼ of Sec. 21 and the W½ NW¼ of Sec. 22, Twp. 25, Rge. 37 E. (160 acres) in Lea County, New Mexico.

The defendants, heirs of seven deceased brothers and a deceased sister of John T. Lanehart, appellee herein, answered claiming an undivided interest in the minerals and counter-claimed against the plaintiff and against the third-party defendant, Argo Oil Corporation, for an accounting of the defendants' portion in the oil and gas removed from the premises, the amount of royalties which had been paid under an oil and gas lease.

The appellee, John T. Lanehart, and his brother, B. T. Lanehart, now deceased, at one time owned the surface and minerals in the land described and when they sold this land they retained jointly ½ interest in the oil and minerals.

The appellee and his brother, B. T. Lanehart, executed an oil and gas lease on 120 acres of the land to which lease Argo Oil Corporation is successor as lessee. This lease on the 120 acres is still in effect. The other 40 acres being SW¼ NW¼ of Sec. 22 were also leased for oil by appellee John T. Lanehart, and his brother, B. T. Lanehart, the lease on the 40 acres expired before the time of the death of B. T. Lanehart, which occurred on March 24, 1943.

On March 4, 1943, B. T. Lanehart executed a mineral deed in favor of John T. Lanehart, appellee herein. The deed is the subject of the controversy in this case. The printed portion of the deed contains the usual provisions found in mineral deed forms used in the oil-area Counties of this State. The deed states that B. T. Lanehart conveys to John T. Lanehart "an undivided ONE-HALF OF ONE-EIGHTH interest in and to all of the oil, gas, and other mineral substances in and under, and that may be produced from the following described land situated in LEA County, State of NEW MEXICO, to-wit:

"The E One-Half (E½) of the NE One-Quarter (NE¼) of Section Number Twenty-one (21) The W. One-Half (W½) of the NW One-Quarter (NW¼) of Section Number Twenty-Two (22). All in Township Number Twenty-Five (25) R 37 E NMPM."

"All Mineral Interest In Sections Numbers Twenty and Twenty-nine (20 and 29) Township Number Twenty-Five (25) 37 E NMPM."

The deed contains a provision that "this sale is subject to the terms of said lease, but covers and includes ONE-HALF OF ONE-EIGHTH of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease * * *" It also provides that ONE-HALF OF ONE-EIGHTH of money rentals which may be paid to extend the term within which a well may be begun under the terms of the lease is to be paid to the grantee and if the lease

'terminates an undivided ONE-HALF OF ONE-EIGHTH of the lease interests and future rentals for oil and other mineral privileges shall be owned by the grantee, HIS owning ONE-HALF OF ONE-EIGHTH of all the oil, gas and other minerals in and under said lands. (All portions capitalized herein appear typewritten in the deed.)

In Count II of appellee's Amended Complaint he alleges that it was the intention and understanding of the parties that the mineral deed convey all the undivided interest owned by B. T. Lanehart in the oil and other minerals and that a mutual mistake occurred in describing the interest conveyed by use of the fractions "one-half of one-eighth" and prayed for reformation of the deed to comply with the actual intention and understanding of the parties.

The trial court, over the objections of the defendants, permitted the plaintiff to introduce parol evidence of the statements of the grantor concerning the execution of the deed and as to what his intentions were in conveying the mineral interest in question and held that the mineral deed contained a patent ambiguity in that the blanks therein for the insertion of the fractional interest of the entire mineral estate to be conveyed, were completed by the use of the double fraction "one-half of one-eighth" and that it was the intent of the parties that the entire mineral interest of B. T. Lanehart in the land be conveyed to

John T. Lanehart, appellee, by the mineral deed, and held that B. T. Lanehart had conveyed his entire ¼th interest in the minerals to appellee.

It will be remembered that B. T. and John T. Lanehart, prior to the execution of the deed in question, owned together an undivided ½ interest in the oil and minerals in said land, each owning an undivided ¼th or ⁴⁄₁₆ths interest.

We entertain no difficulty in arriving at the meaning of the double fraction "½ of ⅛th" which clearly means and is equal to ¹⁄₁₆th.

If B. T. Lanehart, the grantor in the mineral deed, had intended to convey all his interest in the minerals instead of a part or a fraction in Secs. 21 and 22 it would have been a very simple matter for him to have stated "all mineral interest" as he explicitly did with reference to Secs. 20 and 29 in the very same instrument.

The parol testimony given in attempt to ascertain the "intention" of the grantor is very uncertain and indefinite to say the least.

In the case of Duvall v. Stone, 1948, 54 N.M. 27, at page 30, 213 P.2d 212, 214, it was said:

"The plaintiffs have assigned many alleged errors, and have argued them under many points. But we are of the opinion that there is but one question, and that is the meaning of the reserva-·· tion expressed in the deed, to-wit: 'It

is expressly understood that one-half of the one-eighth royalty interest is retained by the grantors.'"

At page 33 of 54 N.M., at page 216 of 213 P.2d: "The royalty here under consideration is not limited to production to be recovered under any particular lease. It is real property, an interest in the oil and gas in or under the 160 acres of land in question. We construe the deed to except and reserve to the grantor, his heirs and assigns the perpetual ½ of the ⅛th royalty of oil and gas, or a perpetual ¹⁄₁₆th of all the oil and gas produced, saved and marketed from said land under the terms of any lease * * *"

The case of Richardson v. Hart, 1945, 143 Tex. 392, 185 S.W.2d 563, 564, involved a mineral deed and interest conveyed was described as ¹⁄₁₆th of ⅛th subject to a lease and the Court held that such a deed conveyed ¹⁄₁₆th of ⅛th or ¹⁄₁₂₈th and the Texas Court in reversing the Court of Civil Appeals, 183 S.W.2d 235, said:

"It is our opinion that the deed is not ambiguous and in the absence of such ambiguity the rule of construction announced by the Court of Civil Appeals is not applicable. Where the terms of the contract are plain and unambiguous the construction given it by the contracting parties is ordinarily immaterial and, in the absence of fraud, ac-

cident or mistake, parol evidence is not admissible to vary its terms. * * *"

In the case of Swearingen v. Oldham, 1945, 195 Okl. 532, 159 P.2d 247, the deed involved in that case contained the following reservation:

"The grantors reserve to themselves one-sixteenth (¹⁄₁₆) of all oil, gas or other minerals in or under this land but convey unto grantee full rights to lease this land for any purpose and to collect and retain all rentals and bonuses. * * *"

Later the grantee executed an oil and gas lease with the customary ⅛th royalty provision and then the original grantors claimed that since ¹⁄₁₆th was equal to ½ or ⅛th, they should be entitled to ½ of the ⅛th royalty received under the oil and gas lease. The Court held that the ownership of ¹⁄₁₆th of the minerals entitled the owners to ¹⁄₁₆th of ⅛th royalty reserved under the lease and said:

"We are of the opinion and hold that the meaning of the language employed in drafting the deed was free from ambiguity and that the grantors in such deed retained and reserved unto themselves an undivided one-sixteenth of the oil, gas and other minerals under the land conveyed when and as produced. They, owning this one-sixteenth of the minerals are entitled to

one-sixteenth of the one-eighth royalty."

In the case of Manley v. Boling, 1939, 186 Okl. 59, 96 P.2d 30, 32, the defendants owned an undivided ⅟₁₆th interest in all of the oil, gas and minerals in a tract of land and contended that their ownership of ⅟₁₆th of the oil, gas and minerals was equivalent to ½ of the royalty interest. In denying this contention the Supreme Court of Oklahoma said:

"Ordinarily, where owners of mineral interests join in the execution of an oil and gas lease, granting to the lessee ⅞ of the oil, their interests are proportionately reduced, so that in order to share equally in the royalty reserved, the estates of the respective lessors in the minerals must have been the same. Thus, if a party purchased ⅟₁₆ of the minerals, and joined with the owners of the remaining ¹⁵⁄₁₆ in a lease reserving a ⅛ royalty, his share in such royalty would be ⅟₁₆ of such ⅛, in the absence of any agreement to share in different proportions. And the result would be the same if at the date of the purchase of the mineral interest the land(s) were subject to an oil and gas lease. The purchaser's interest in the royalty reserved therein would be in the exact proportion that his interest in the minerals bore to the whole mineral estate."

The general rule with regard to the admissibility of parol evidence concerning written instruments is stated in Hoge v. Farmers Market and Supply Co., 1956, 61 N.M. 138, 296 P.2d 476, 477.

The plaintiffs in that case offered the note and contract in evidence and after they were admitted the defendant offered proof of the intention of the parties when contracting and in this connection this Court said:

"In support of the proposition that where the terms of an agreement are plainly stated, without ambiguity, the intention of the parties must be ascertained from the language used, and that parol evidence is, in that situation, wholly inadmissible, plaintiff cites the following cases   *   *   *'"

Then a number of cases from New Mexico and other jurisdictions are cited and the Court further said in this regard:

"We consider the point so well established as a legal principle that citation of authority is not really necessary."

■■ The terms of the deed under consideration are not ambiguous, to our way of thinking, and the trial court erred in permitting parol evidence to be introduced in an attempt to show the intention of the grantor which was clearly an effort to vary the terms of an unambiguous written instrument and we hold that B. T. Lanehart

364

conveyed to John T. Lanehart an undivided 1/16th interest in the oil, gas and other minerals in the land involved and at the time of his death B. T. Lanehart owned an undivided 3/16ths interest in said oil, gas and minerals and his heirs inherited the interest which he had at the time of his death.

Likewise, B. T. Lanehart, prior to the execution of the deed, had 4/16ths or 1/4th interest in the 1/8th royalty and by the deed he conveyed to John T. Lanehart 1/16th interest in the royalty and owned, at the time of his death, 3/16ths interest in the royalty.

The defendants, appellants herein, in the court below sought an accounting against the plaintiff and Argo Oil Corporation, Third-Party Defendant, for their claimed share in 3/16ths of 1/8th of the proceeds of the oil and gas, being the royalty which had been paid under the lease.

■ Bearing in mind that the action instituted is a suit to quiet title therefore the issues raised by the appellants in this case in their counter-claim for an accounting are not related to the title to the premises, the suit to quiet title being a statutory proceeding, counter-claims are not within the purview of the Quiet Title Statute, Section 22–14–1 N.M.S.A. 1953 Compilation; and this point has clearly and decidedly been determined in the case of Clark v. Primus, 1957, 62 N.M. 259, 308 P.2d 584.

The appellants are not entitled to an accounting in the suit which is involved in this action, being a suit to quiet title, and their contention for accounting is held against them.

The case is reversed and remanded to the District Court with instructions to set aside its judgment and enter judgment in accordance with the views herein expressed.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and COMPTON, JJ., concur.

KIKER, J., not participating.