CHARLES H. MacDONALD AND ELSA V. MacDON-
ALD, APPELLANTS, *v.* MILTON H. KRAUSE AND
NOLA L. KRAUSE, HUSBAND AND WIFE, RESPOND-
ENTS.

No. 4363

June 23, 1961                               362 P.2d 724

(Petition for rehearing denied August 21, 1961.)

*Gordon L. Hawkins* and *Tad Porter,* of Las Vegas, for
Appellants.

*Richards & Swanson,* of Reno, for Respondents.

## OPINION

By the Court, BADT, C. J.:

Two questions are presented for determination in
this appeal: (1) In an action to quiet title to real
property must the defendant plead as a compulsory

counterclaim defendant's demand for a money judgment against plaintiff arising out of the same transaction that is the subject matter of plaintiff's claim, or be thereafter barred from a separate suit therefor? We answer this question in the affirmative. (2) Is this conclusion affected by the fact that the defendant did not appear in the action but suffered judgment to be entered against him by default? We answer this inquiry in the negative.[1]

We refer to the MacDonalds, appellants herein, as MacDonald, and to the Krauses, respondents herein, as Krause.

Krause entered into a written contract to sell the property to MacDonald for $35,000. The district court filed a decision reciting the facts in part as follows: (We have substituted the names MacDonald and Krause for the court's use of the designation of plaintiffs and defendants.) "MacDonald paid a deposit of $500 to Krause and a down payment of $11,000 as provided by the terms of said contract and thereupon took possession. MacDonald failed to make the subsequent payments that were due under the contract, and seeks relief upon the theory that the difference between the money paid to Krause and the actual rental value is $9,500. The contract was recorded in the office of the county recorder * * *. The filing of the document created a cloud upon Krause's title * * *. Krause filed suit requiring MacDonald to come forth and assert any interest he may have in said premises * * *. MacDonald failed to answer or otherwise plead in said cause and a judgment was entered in favor of Krause quieting title to the lands in dispute in said controversy. This judgment * * * is set up as a bar to the litigation at hand upon the ground that the matter is res judicata."

---

[1]Rule 13(a) NRCP reads as follows:

"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the ing action." This is identical with the federal rule (Rule 13(a), 28 U.S.C.A.).

Krause had moved for a summary judgment. The court granted the motion, holding that under NRCP Rule 13(a) MacDonald was barred by reason of his failure to set up his counterclaim in the prior quiet title action and that the judgment in that action was res judicata.

MacDonald's assignment of error is as follows: "The court erred in its ruling that an action to recover a penalty under a real property purchase and sale agreement, must be pleaded as a compulsory counterclaim in an action to quiet title to the property involved." He further says: "The problem in this case is whether by virtue of appellants herein failing to counterclaim upon the theory of unjust enrichment in the quiet title action, they are now precluded from maintaining this action in an independent suit." Although we do not base our conclusions upon the duty of the court, in such case, to do complete equity, it adds emphasis to the conclusions hereinafter reached.

(1) In support of his assignment that the court erred in holding that MacDonald's action against Krause was barred by the provisions of NRCP Rule 13(a), MacDonald places his main reliance on two New Mexico cases and one California case. They are Lanehart v. Rabb, 63 N.M. 359, 320 P.2d 374; Clark v. Primus, 62 N.M. 259, 308 P.2d 584; and Zainudin v. Meizel, 119 Cal.App.2d 265, 259 P.2d 460.

Lanehart v. Rabb depends entirely upon the earlier Clark v. Primus, which it follows. Clark v. Primus was

The prior sections of the civil practice act, secs. 8603 and 8604 NCL, 1929, read as follows:

"§ 8603. The counterclaim mentioned in the last section shall be one existing in favor of the defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

"2. In an action arising upon contract, any other cause of action arising also upon contract and existing at the commencement of the action."

"§ 8604. If the defendant omit to set up a counterclaim in the cases mentioned in the first subdivision of the next preceding section, neither he nor his assignee can afterward maintain an action against the plaintiff therefor."

a proceeding brought by a bill to quiet title to realty formerly owned by decedent, against decedent's first wife. The first wife counterclaimed, seeking an accounting of rents and profits from the premises. The trial court dismissed her counterclaim and, in affirming this action, the Supreme Court of New Mexico simply disposed of the matter as follows: "Appellee assigns as error the action of the court in dismissing her counterclaims. We have considered this assignment and find no error. The counterclaims, in the main, seek an accounting of the rents, profits, etc., received from the premises. Hence, the issues raised by the counterclaims are unrelated to the title to the premises. This being a statutory proceeding, counterclaims are not within the purview of the quiet title statute, § 22–14–1, N.M.S.A. 1953 Compilation. Petrakis v. Krasnow, 54 N.M. 39, 213 P.2d 220, 222; Albarado v. Chavez, 36 N.M. 186, 10 P.2d 1102; Otero v. Toti, 33 N.M. 613, 273 P. 917. Compare McCarthy v. Kay, 52 N.M. 5, 189 P.2d 450." The authorities relied on for this holding are all decisions by the same court. It is necessary to refer to them. Otero v. Toti, it may be noted, was decided in 1928, some 14 years before New Mexico adopted the federal rules. As we read the case, the holding was simply that under the facts the plaintiff had no cause of action to quiet title, but that she should have sued to establish a trust. The court said that both actions to establish a trust and actions to declare a deed an equitable mortgage entitling the grantor to redeem are well known to equity. The court then held [33 N.M. 613, 273 P. 918]: "But they are not to be had in a statutory proceeding to quiet title, the only issue in which is whether plaintiff has an interest or estate in the property superior to the adverse claims. * * * But in our statutory suit to quiet title we have created a form of action. * * * In such suits, however, the relief is limited by the statute. A title may be quieted against an adverse claim, but a trust may not be decreed, or a deed declared a mortgage." The case is of no assistance.

Nor is Albarado v. Chavez helpful. The Supreme Court of New Mexico sustained the judgment of the trial court dismissing the plaintiff's complaint with

prejudice. The holding was simply that a vendor who had been paid the purchase price of realty, which was the sole condition precedent to delivery of an escrow deed, could not maintain an action to quiet title as against the vendee in possession to cut off the latter's equitable estate.

In Petrakis v. Krasnow the lower court dismissed the plaintiff's complaint and this dismissal was reversed on appeal, the supreme court holding [54 N.M. 39, 213 P.2d 224]: "The plaintiff herein seeks * * * to quiet the title to lands to which he holds the record legal title and is in possession as against liens claimed by others which cloud that title. The dismissal of his complaint was not justified * * *."

The last notation of authority in Clark v. Primus is "Compare McCarthy v. Kay * * *." The headnote in that case reads as follows: "The res judicata doctrine and rule against splitting causes of action did not bar lessor's action against lessee for expenses incurred by lessor in exposing forgery of lease set up by lessee to support his defense and cross-complaint for damages in lessor's previous ejectment action, as count for such expenses could not be joined in such action." The opinion was written when the federal rules were in effect in New Mexico. Although in no way supporting the holding of the main case relied on, namely, Clark v. Primus (it is referred to only for comparison and not as authority), it would appear to support appellants' contention that the defendant's counterclaim for damages resulting from the fraud of the quiet title plaintiff, arising out of the same transaction, did not constitute a compulsory counterclaim but the proper basis of a subsequent action. In "The 'New Rules' in New Mexico," by Professor Jerrold L. Walden, 25 F.R.D. 107, 119, the author first notes: "The holding in Primus v. Clark makes little sense not only in light of the broad objectives of procedural reform but from a practical standpoint * * *.

"* * * Here, the New Mexico supreme court held that in a suit to quiet title, a counterclaim demanding an accounting of rents and profits derived from the

premises in question could not be asserted by defendant. No explanation for what appears to be outright judicial repeal of Rule 13 was offered except that 'This being a statutory proceeding, counterclaims are not within the purview of the quiet title statute.' " We agree with his comment that a careful reading of the quiet title statute reveals nothing specifically nor inherently at variance with the unrestrictive counterclaim provisions of Rule 13. Pertinent also is his reference to the New Mexico case of Martinez v. Mundy, 61 N.M. 87, 295 P.2d 209, 215, to the effect that a counterclaim to a quiet title complaint was proper since it merely conformed to the old equity practice that "* * * [W]hen a court of chancery obtains jurisdiction of a cause, it will retain it to administer full relief."

We are unable to accept the reluctance of the Supreme Court of New Mexico to accord to Rule 13(a) the scope of the procedural relief, which we think was clearly intended by it. Since the adoption of the federal rules in Nevada, effective January 1, 1953, litigants and attorneys have continuously benefited by the reforms adopted therein. To limit unnecessarily the scope of Rule 13(a) would, in our opinion, be a backward step.

Before we leave the New Mexico cases upon which the appellants place such strong reliance, we refer again to the statement made by the supreme court of that state in the Clark case, supra: "This being a statutory proceeding, counterclaims are not within the purview of the quiet title statute." It has always been recognized that equity has inherent original jurisdiction of bills to quiet title to property and to remove a cloud from the title. 74 C.J.S., Quieting Title, sec. 1, p. 10. They originated in the chancery courts to correct abuses encouraged under the common-law system under which designing litigants by bringing successive actions in ejectment harassed and annoyed the rightful owner. 44 Am.Jur. 5, n. 5; Anno., 12 L.R.A. (N.S.) 49, "Effect of Remedy at Law upon Equitable Jurisdiction to Remove Cloud on Title." See Howard, "Bills to Remove Cloud from Title," 25 W.Va.L.Q. 4 (1917–1918). In Low v.

Staples, 2 Nev. 209, this court noted in 1866: "The plaintiff [in this suit to quiet title] seeks a remedy which Courts of Equity have always granted independent of any statute, where a proper case was made out." This was quoted with approval by this court in Clay v. Scheeline Bank & Trust Co., 40 Nev. 9, 16, 159 P. 1081. Such being true and in view of the recognized province of the courts of equity to do complete justice between the parties, appellants' claim for unjust enrichment, likewise grounded in equity (with restitution, quasi contract, implied contract, resulting and constructive trust, accounting, and possibly other remedies), Magill v. Lewis, 74 Nev. 381, 333 P.2d 717, may be the means applied to afford complete equitable relief in one action.

The third case relied upon by appellants is Zainudin v. Meizel, 119 Cal.App.2d 265, 259 P.2d 460, 463. This was an action for fraudulent representations leading to the plaintiffs' purchase from defendants of a leasehold in a hotel. Judgment was for the plaintiffs. The contention in the trial court and on appeal was that the failure of the plaintiffs to plead their claim as a counterclaim in defendants' prior suit for cancellation of the leasehold agreement and to quiet title to the hotel furniture did not preclude their maintaining the present action. The court said: "Here the appellants' suit to quiet title to personalty could not have been 'offset' in any degree by respondents' suit for damages for fraud. For that reason it would not have been a proper counterclaim in the suit to quiet title." Further language of the court indicated that the plaintiff's claim for damages in the second action could not have been asserted by way of counterclaim in the first quiet title action, because it would not have "diminished or defeated the prior quiet title action." The case was decided in 1953. Strangely enough, the court made no reference to Hill v. Snidow, 100 Cal.App.2d 37, 222 P.2d 962, 963, decided in 1950. That case (in which not only was a rehearing denied but a hearing by the Supreme Court of California likewise denied) is directly in point in favor of respondents in the instant appeal. In Hill v. Snidow, Hill sued to recover

moneys alleged to be due him as the result of a transaction entered into between the parties relative to the purchase by Hill of certain realty. The California court sustained the action of the trial court in favor of defendant to the effect that where defendant, as an affirmative defense to plaintiffs' action, pleaded that there had theretofore been another action between the same parties arising out of the same transaction, and that in such prior action the present plaintiffs had omitted to set forth facts in the counterclaim, which facts arose out of the transaction set forth in the previous complaint, the plaintiffs were now barred from alleging a grievance arising out of the transaction. The court set forth the California statute C.C.P. sec. 439 as follows: " 'If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor.' " It quoted with approval the language used in Brunswig Drug Co. v. Springer, 55 Cal.App.2d 444, 449, 130 P.2d 758, as follows: " 'A party cannot by negligence or design withhold issues and litigate them in separate actions * * *. He may not split his demands or his defenses. * * * Equity will not deal with a case by piece-meal.' " When we note that the first action had been brought by Snidow against Hill to quiet title to the property in question and the second action had been filed by Hill against Snidow to recover money damages growing out of the same transaction relative to the purchase of the property, we have here a direct holding by the California court in support of the respondents. If Zainudin v. Meizel is contra, it is because it is the result of applying C.C.P. sec. 438, which requires that the counterclaim "must tend to diminish or defeat the plaintiff's recovery," a requirement which does not appear in NRCP. In 2 Chadbourn, Grossman, Van Alstyne, California Pleading sec. 1686 (1961), the California situation is discussed as follows: "The chief restriction on counterclaims under the present [California] statute is that a counterclaim must tend to

diminish or defeat plaintiff's recovery—[Zainudin v. Meizel] a requirement in keeping with the theory that the counterclaim is a part of the answer. In practice this means that use of the counterclaim is confined principally to conflicting monetary claims. * * * When the counterclaim relates to the same transaction as the complaint, however, the requirement may perhaps be deemed satisfied even though the relief sought by the counterclaim differs from that sought in the complaint." In support of this conclusion the writers cite as an example Hill v. Snidow. We are justified in concluding that on this phase of the subject and on the facts of the present appeal the California rule is reflected by Hill v. Snidow.

In United Artists Corp. v. Masterpiece Productions, Inc. (CA2d), 221 F.2d 213, 216, the following language was used: "We think that these pleadings disclose a sufficient logical relationship so that, in the interest of avoiding circuity and multiplicity of action, the counterclaim should be considered compulsory under the authorities cited above."

The rule is expressed as follows in 3 Moore, Federal Practice, par. 13.13, at 33 (2d ed. 1953) : "Subject to the exceptions, any claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim; only claims that are unrelated or are related, but within the exceptions, need not be pleaded." See United States v. Eastport S.S. Corp. (CA2d), 255 F.2d 795. The logical relationship between the claims asserted in the quiet title suit and the present action is manifest. The subject matter of the quiet title suit was the recorded contract of sale. MacDonald's possession of the real property arose out of that contract. His present claim for money damages is the result of his having paid money to Krause under that contract.

As to the breadth of meaning to be applied to a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," reference is made to McArthur v. Moffett, 143 Wis. 564, 128

N.W. 445, 33 L.R.A. (N.S.) 264, which used the following language: "The words are general to the last degree; indeed, they must be so for they are intended to provide for and apply to the myriad difficulties that may arise between man and man in all kinds of situations, and no words of limited or narrow meaning could be used." See 3 Moore, Federal Practice, par. 13.13, at 34, et seq. (2d ed. 1953), for many other federal cases. The reasons given for the rule as requiring parties to litigate their differences in one suit, thus avoiding a multiplicity of suits, are reflected in this state in Warren v. Delong, 59 Nev. 481, 97 P.2d 792, 795. Quoting with approval the language of the Supreme Court of Minnesota in King v. Coe Commission Co., 93 Minn. 52, 100 N.W. 667, this court said: " ' "The term 'transaction,' as used in the statute, is obviously broader than the term 'contract,' and authorizes matters to be set up as counterclaims, which could not be so pleaded as arising upon the contract relied upon by plaintiff. The cause of action arises from the transaction set forth in the complaint when the combination of acts and events, circumstances and defaults, upon which the rights of the parties are based, when viewed in one aspect, result in plaintiff's right of action, and, when viewed in another aspect, result favorably to defendant. The transaction is not necessarily confined by the facts stated in the complaint, but the defendant may set up new facts, and show the entire transaction, and counterclaim upon that state of facts as the transaction upon which plaintiff's claim is founded." ' "

(2) Appellants contend that, conceding the ban against the second suit by reason of the compulsory counterclaim rule, this can only apply where the defendant in the first suit has appeared and answered. We do not consider that this contention is valid. Keller v. Keklikian, 362 Mo. 919, 244 S.W.2d 1001; Friedrichsen v. Cobb, 84 Mont. 238, 275 P. 267 (but see dicta in Douglas v. Wisconsin Alumni Research Foundation, D.C. Ill., 81 F.Supp. 167, 170). In Firemen's Insurance Co. of Newark v. L. P. Steuart and Bros., Inc.,

D.C. Mun.App., 158 A.2d 675, it was definitely held that the failure to assert a claim in an earlier action, where the then-defendant suffered a default judgment, bars him from suing on it in a later action, citing Woods v. Cannady, 81 U.S. App.D.C. 281, 158 F.2d 184, and Comer v. Fistere, D.C. Mun.App., 103 A.2d 206. Likewise in United States v. Eastport S.S. Corp. (CA2d), 255 F.2d 795, 805, the court rejected the contention that the rule applied only when there was a trial on the merits. It is stated in the Advisory Committee notes to the federal rules that independent suit is barred if the earlier action has "proceeded to judgment," without indicating what kind of a judgment it contemplates.

Affirmed.

McNAMEE and THOMPSON, JJ., concur.