[Civ. No. 12223. Third Dist. June 25, 1969.]

ALLAN T. OLSON et al., Plaintiffs, Cross-defendants and Respondents, v. COUNTY OF SACRAMENTO, Defendant, Cross-complainant and Appellant.

---

John B. Heinrich, County Counsel, Thomas A. Darling, Deputy County Counsel, and Clyde Small for Defendant, Cross-complainant and Appellant..

Colley & McGhee and Nathaniel S. Colley for Plaintiffs, Cross-defendants and Respondents.

BRAY, J.*—Appeal by cross-complainant County of Sacramento from a judgment on the pleadings on the cross-complaint in favor of plaintiffs and cross-defendants Olson and Petrucci.

Motion by plaintiffs for dismissal of the appeal.[1]

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] This is one of three matters considered together by this court arising from a superior court action in which plaintiffs sought damages against county for alleged wrongful breach of contract. The others are: (1) No. 12149, petition by plaintiffs for a writ of mandate to compel the superior court to set aside its order allowing, after notice of this appeal was filed, the filing of a cross-complaint; (2) No. 12164, petition by the county for a writ of mandate to set aside the judgment on the pleadings on cross-complaint herein appealed from.

## QUESTIONS PRESENTED

A. Motion for dismissal.

Was the notice of appeal timely filed? Yes.

B. Appeal from judgment on the pleadings.

1. Is defendant's pleading a counterclaim? No.

2. Did the cross-complaint state a cause of action:

(a) Generally? Yes.

(b) Excuse adequately pleaded to avoid statute of limitations? No.

3. Did the trial court abuse its discretion in denying permission to file an amended cross-complaint? Yes.

## RECORD

On February 10, 1965, plaintiffs filed a complaint against the county for breach of an exclusive garbage franchise awarded plaintiffs' predecessors in 1958 and which the county terminated in 1963 for alleged fraud in suppressing competition in the bidding for said franchise.

On April 13, 1966, the county filed its answer and separately a cross-complaint for moneys collected by plaintiffs through the exercise of the allegedly fraudulently obtained franchise.

On December 14, 1967, plaintiffs, as cross-defendants, filed a "motion for summary judgment for cross-defendants on cross-complaint, for order striking affirmative defense to complaint, and for judgment for cross-defendants on the pleadings." On May 10, 1968, the trial judge filed a "Memorandum" to the effect that section 340, subdivision 1, of the Code of Civil Procedure is the statute of limitations applicable to the cause of action alleged in the cross-complaint and that as the latter did not allege facts showing due diligence in discovering the fraud, lack of knowledge of it within the statutory period, reason for failure to discover the fraud, and the means and manner by which it was discovered, the motion for judgment upon the pleadings in regard to the cross-complaint "will be granted." On the same day this memorandum was entered in the minutes the clerk sent to the parties "notice of the court's ruling on the motion for judgment on the pleadings re cross-complaint," stating that an order or decree had been entered in the minutes in the above entitled action on May 10, 1968, giving volume and page.

On July 9, 1968, and before any judgment was entered, the county filed a "motion for new trial on order granting motion for judgment on the pleadings against cross-complaint and to

vacate and set aside any judgment entered thereon; or, in the alternative, for leave to amend said cross-complaint.''

On July 10 the court entered ''judgment on the pleadings on cross-complaint.'' The court additionally denied the plaintiffs' motion to strike the affirmative defense of fraud in defendant's answer. It is this judgment which is appealed herein. On September 5, 1968, an order denying motion for new trial on the order granting motion for judgment on the pleadings was entered in the minutes.

A. Motion to Dismiss Appeal.

■ The notice of appeal was timely filed. The motion was made on the ground that the appeal was not filed within the time allowed by law. The judgment was entered July 10, 1968. The notice of appeal was filed September 19—71 days thereafter. It is conceded that the notice was filed too late unless the time provided in rule 2, California Rules of Court, was extended as provided in rule 3, which provides that when a valid notice of intention to move for a new trial is served and filed, the time for filing notice of appeal, where the motion is denied, is extended until 30 days after entry of the order denying the motion.

It is likewise conceded that if rule 3 applies the notice of appeal was filed in time. ■ A motion for new trial may be made on a judgment on the pleadings. (*Carney* v. *Simmonds* (1957) 49 Cal.2d 84, 89 [315 P.2d 305].)

It will be noted that the county filed its motion for new trial on the order granting judgment, etc., on July 9, the day before the judgment was filed but after the minute order of May 10. ■ Plaintiffs contend that the motion was filed prematurely and hence cannot be considered as extending the time for appeal under rule 2.[2]

Section 659 of Code of Civil Procedure provides so far as pertinent here that notice of intention to move for new trial must be filed ''Before the entry of judgment. . . .''

In *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 458 [20 Cal.Rptr. 321, 369 P.2d 937], the court discusses at length '' [t]he concept of prematurity as applied to new trial proceedings'' and states that concept ''is based on two major concepts—one is that to vest the trial court with jurisdiction to pass on a motion for a new trial a timely notice

---

[2]It should be pointed out that the ''motion for new trial'' did not strictly conform to the ''notice of intention to move for new trial'' specified in section 659, Code of Civil Procedure. However, the parties and the court considered it as sufficient and at that time no point was made of its form.

must be made. . . . The other ·is that the motion cannot be made until there is a decision in the case.'' The court points out that a jury's verdict or the filing of findings of fact and conclusions of law, even though no judgment be entered, are sufficient to constitute the ''decision'' which starts the period for filing motions for new trial.

On the determination of a motion for judgment on the pleadings no findings are necessary. No reason exists where, as in this case, the memorandum of decision entered in the minutes of the court and notice thereof sent to the parties should not be equal to the filing of findings to start the time for the purpose which we are considering.

In section 659 the Legislature has made two provisions for starting the time for new trials. The notice may be given (1) ''Before the entry of judgment,'' and (2) within a specified time after judgment. To hold that the memorandum of decision does not cause the application of the first provision of section 659 in this character of case would eliminate entirely the possibility of applying the first provision of the section.

It should be pointed out in answer to contentions of plaintiffs that findings of fact may be changed before judgment and jury verdicts may under certain conditions be set aside before judgment, hence the fact that a memorandum decision is not final is not important. Actually the only finality in any of these situations is the judgment. The Legislature, by providing for proceeding prior to judgment, has eliminated the necessity for complete finality.

The motion for new trial, which the parties and the court treated as equivalent to a notice of intention to move for new trial, was filed in time, and hence the time for appeal from the judgment was extended until after the denial of the motion.

B. Appeal From the Judgment.

1. Is defendant's pleading a cross-complaint or a counterclaim?

County contends that it is a counterclaim. Although it is sometimes difficult to distinguish between a cross-complaint and a counterclaim, it appears that the pleading is a cross-complaint.

A counterclaim must in some way qualify or defeat the judgment to which plaintiff is otherwise entitled; it must tend to diminish or defeat the claim for damages alleged in the complaint; as such, the counterclaim is confined principally to conflicting monetary claims. (Code Civ. Proc., § 438;

324

*Zainudin* v. *Meizel* (1953) 119 Cal.App.2d 265, 267-268 [259 P.2d 460]; see also, 2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading, § 1686, p. 652.)

■ On the other hand, the cross-complaint must seek affirmative relief, but unlike the counterclaim it is not necessary that the relief sought by the cross-complaint should defeat or diminish that relief sought by the plaintiff in his complaint. (2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading, § 1705, p. 660.)

■ Should plaintiffs be successful in sustaining the cause of action in their complaint, namely, that there was no fraud in obtaining the franchise, and hence the county is liable to them in damages for the breach of the franchise, or contract, no offset to the amount thereof is asserted by the county— there is nothing upon which to counterclaim, that is to offset or diminish. On the other hand, if plaintiffs are unsuccessful in prevailing, then it takes the cross-complaint to set up the affirmative relief entitling the county as trustee to obtain moneys collected by plaintiffs under a void franchise.

2. Did the cross-complaint state a cause of action:

(a) Generally?

Plaintiff contends that, although the trial court in granting the judgment on the pleadings as to the cross-complaint found only that the cause of action appeared to be barred by the statute of limitations, there are other grounds upon which the court could have found the cross-complaint defective, and that the well-known rule applies that if the court's action is proper upon any ground, the judgment must be affirmed.

An analysis of these alleged grounds show plaintiffs' contentions to be erroneous. ■ The first is that the county has no capacity to bring this action.

The cross-complaint alleges that the county is suing as trustee in behalf of those persons who paid service rates for garbage collection and disposal to the holders of the franchise thereinafter described; the proceeding relating to the calling of bids for the franchise and to the awarding of the franchise to plaintiffs as the lowest bidder; the collection or rates pursuant to the franchise; the conspiracy of plaintiffs and others to suppress competition in the bidding, and prays for a declaration that plaintiffs hold the sum of $4,833,000 in trust for the county as trustee.

Section 369 of the Code of Civil Procedure, provides in pertinent part that a "trustee of an express trust . . . may sue without joining with him the persons for whose benefit the

action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section." Here the county is the "person" who made the contract for the benefit of its residents. (See *City of Oakland* v. *California Constr. Co.* (1940) 15 Cal.2d 573, 578 [104 P.2d 30], where it was held that a complaint brought by the city as trustee for the property owners to recover the proceeds of a street improvement contract obtained under the Improvement Act of 1911 on collusive bids stated a cause of action; and *City of Oakland* v. *De Guarda* (1928) 95 Cal.App. 270 [272 P. 779, 273 P. 819], where the court upheld an action by the city as trustee for property owners for damages for breach of a bond given under the same Street Improvement Act, resulting in damage to property owners.)

In both of these cases it was the property owners in the districts which had suffered the damage, yet it was held that the city could bring the action as trustee for them if for no other reason than to prevent a multiplicity of actions. The situation in the instant case is similar.

In *Market Street Ry. Co.* v. *Railroad Com.* (1946) 28 Cal.2d 363 [171 P.2d 875], the court held that the City and County of San Francisco, as successor to the Market Street Railway, was entitled to receive the portion of the fares received by the Market Street Railway which the commission found to be excessive and which had not theretofore been paid to claimants, the time for making claims having expired.

Although the original cross-complaint and the proposed amended cross-complaint show definitely that the county is suing as trustee for the householders, county counsel at oral argument suggested that the county is not suing as trustee solely, but in the alternate, on its own behalf, relying on *Market Street Ry., supra,* as authority for its right to do so. However, an examination of that case shows that, in effect, the court ordered the unclaimed funds to be paid to the City and County of San Francisco as trustee for the people who had paid excessive passenger fares to the Market Street Railway and for the residents. As the court said (at pp. 371-372) : "It is also contended that inasmuch as the people of the city paid the excess fares they are the natural beneficiaries thereof." (Just as in the instant case, the householders paying garbage rates are the natural beneficiaries of any recovery by the County of Sacramento.) "It is urged that the disposition of the unclaimed portion of the fund to the city will effect in

substance its return to those who collectively are charged with the maintenance of the railway property, namely the people of the city, for the benefit of all who may avail themselves of the transportation service. . . .''

In *Market Street Ry.*, *supra*, it was held impractical for the city to distribute the moneys which it received among the passengers who had paid the excessive fares and had not filed claims therefor. In that case it was held that ''Equitable considerations dictate that the people of the city, who contributed the moneys . . . are entitled to have them distributed for their benefit'' in the rehabilitation of the city's street car system. (Pp. 372-373.) If, in the case at bench, it is found to be impracticable to distribute any recovery obtained by the county in this action to the householders who paid the garbage rates under the void contract, such recovery can be used in other respects for the benefit of the county's householders.

In view of the county's pleadings and the cases herein discussed, we determine that the county is suing herein as trustee.

■ Plaintiffs argue that quo warranto is the exclusive remedy afforded the county, but quo warranto as provided in section 809 et seq. of the Code of Civil Procedure is not the exclusive remedy for the unlawful exercise of a franchise. Section 811 expressly provides for actions therefor by counties and municipal corporations. It was enacted to enable local bodies to initiate their own action without going through or waiting for the Attorney General to commence the action. (See 15 Hastings L.J. 222, 224.)

■ Without merit is plaintiffs' argument that their acquittal in criminal proceedings is a bar to the present action. Their argument presupposes that the county's cross-complaint is an action for forfeiture or penalty which they claim is criminal in nature. This is not such an action. There is neither a forfeiture nor penalty clause in the franchise agreement nor is the recovery for the fraud based upon any statute for forfeiture or penalty. The action is for return to the county as trustee for the householders of moneys paid by the latter to plaintiffs under a void contract.[3]

(b) Excuse adequately pleaded to avoid statute of limitations?

[3]We hold no opinion on the question of whether in case of recovery by the county herein, the court should consider in determining the amount of such recovery, the value of the services rendered to the householders by plaintiffs.

As hereinbefore stated the trial court granted the motion for judgment on the pleadings on the ground that the cross-complaint failed to show lack of knowledge of the fraud; due diligence in discovering it; the means and manner in which it was discovered; and the reason for failure to discover it within the statutory period. The court properly found that as this is not an action for a penalty or forfeiture, section 340, subdivision 1 (1 year) does not apply, but that section 338, subdivision 4 (3 years) does.

The allegations in the cross-complaint pertinent to this discussion allege only that "Neither the Board of Supervisors of Defendant, or any member thereof, nor any other officer, employee or agent of Defendant knew, received or was communicated knowledge of any of the facts" concerning the alleged fraud "until a time subsequent to June 1, 1963."

■ An action based on fraud may be brought more than three years after the fraud occurred if the plaintiff shows not only that he did not discover the facts but could not with reasonable diligence have discovered them within that time. (2 Witkin, Cal. Procedure (1954) Pleading, § 479, p. 1465.)

■ ". . . The complaint must set forth specifically (1) *the facts of the time and manner of discovery; and* (2) *the circumstances which excuse the failure to have made an earlier discovery.*" (*Orange County Rock etc. Co.* v. *Cook Bros. Equipment Co.* (1966) 246 Cal.App.2d 698, 703. [55 Cal. Rptr. 265].) ■ Applying these rules, it is clear that the cross-complaint did not meet the requirements. It merely alleged lack of knowledge without alleging any of the matters required to be alleged, hence the judgment on the pleadings was proper.

3. Abuse of discretion in denying permission to file proposed amended cross-complaint.

As we have shown, the original cross-complaint stated a cause of action and was only defective in its allegations to meet the statute of limitations. The proposed amended complaint repeated the allegations of the original as to the cause of action and added allegations to meet the original complaint's inadequacy in avoiding the statute of limitations. These additional allegations are that "Neither defendant nor any agent thereof knew, received or was communicated knowledge of any of the facts and allegations contained in Paragraph XII . . . [the fraud allegations] until on or about June 17, 1963. Said knowledge was acquired in the manner described below.

"In November of 1962, the Sacramento County Grand Jury commenced an investigation of the rates charged by the franchise . . . and of the method of establishing said rates.

"In preparing to assist the Grand Jury in the conduct of said investigation, the Sacramento County District Attorney interviewed Joseph Arbini, who disclosed to said District Attorney the facts alleged in Paragraph XII, above. As a result of said disclosure, the Grand Jury investigation was broadened to include an inquiry into both the administration and operation of said franchise and the circumstances surrounding its procurement by Plaintiffs with reference to the allegations contained in Paragraph XII, above.

"The Sacramento County District Attorney prepared for and investigated said unlawful conspiracy, combination, confederation and agreement in assisting the Grand Jury to investigate same during the month of December, 1962. The hearings of the Grand Jury commenced in January, 1963, and continued through the month of May, 1963. During the hearings of the Grand Jury several witnesses gave testimony, including Plaintiffs and various officers and employees of Defendant.''

The cross-complaint goes on to state that the knowledge gained by the district attorney and the grand jury in December 1962 was directed to the criminal aspects of the conduct under investigation, with a view towards imposition of criminal responsibility. No officer or employee of the county, other than the district attorney and his staff, acquired any knowledge of either the purpose or the facts of the investigation during the period the investigation was being conducted, as it was conducted in complete secrecy and no information concerning the matter was communicated to defendant, or any agent thereof, and none had knowledge thereof. All witnesses before the grand jury were admonished not to discuss or impart any information outside the jury room unless authorized by the grand jury or court, and that to do so might be the basis of charges of contempt of court. On June 17, 1963, indictments were issued by the grand jury charging plaintiffs with criminal responsibility for the acts charged in the cross-complaint. A public report was issued by the grand jury on June 21. Defendant and its agents first acquired knowledge of the facts as a result of the filing of the indictments or of said reports and at a date after June 17.

In the franchise there is a provision to the effect that the county may from time to time investigate and change the rates provided. Plaintiffs contend that as the alleged fraud

was discovered in the course of a rate investigation the county had the means to make such investigation during the first three years, and that, therefore, the statute ran to bar this proceeding. That is a *non sequitur*. A county always has means to investigate the legality of any contract in which it has entered. However, there is no requirement that unless it is put on notice of a possibility of fraud, it must within three years investigate such possibility or be forever barred. The cross-complaint was filed April 13, 1966, within three years of the discovery by the county of the alleged fraud.

 The allegations of the proposed amended cross-complaint are sufficient to prevent the application of the bar of section 338, subdivision 4, of the Code of Civil Procedure.

 As the proposed amended complaint stated a cause of action not barred by the statute of limitations, the court should have granted the motion to allow its being filed. ''[A] motion for judgment on the pleadings is in effect a general demurrer and 'it is only where there is an entire absence of some essential allegation that a motion for judgment on the pleadings may be properly granted.' (*Rannard* v. *Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149, 151 [157 P.2d 1].) Even where such·a motion may properly be granted, an opportunity to amend is generally allowed, as is the practice with a general demurrer. The need for allowing an opportunity to amend is particularly apparent where, as in the instant case, *the complaint has already been upheld against a general demurrer:''* (*Shabrick* v. *Moore,* 195 Cal. App.2d 56, 60 [15 Cal.Rptr. 310].) (Italics added.)

 In the instant case no demurrer to the cross-complaint was filed, but motions to dismiss and strike the cross-complaint and for judgment on the pleadings as to cross-complaint were denied by a judge other than the one who later granted the motion for judgment on the pleadings thereon.

2 Witkin, California Procedure (1954) Proceedings Without Trial, section 74, pages 1710-1711 (quoted with approval in *Shabrick, supra,* p. 60) states: '' [W]here no demurrer was interposed it is error to grant the motion for judgment on the pleadings without giving the adverse party the same opportunity to amend that he would have had after the normal ruling on demurrer. It would seem even more true that, after a complaint or answer has been held sufficient by a law and motion judge, if the trial judge decides otherwise on a motion for judgment on the pleadings, an opportunity to amend should be allowed.''

**330**

■ As stated in *Dobbins* v. *Hardister* (1966) 242 Cal. App.2d 787, 796 [51 Cal.Rptr. 866], there are two situations in which the trial court *must* grant leave to amend before granting judgment on the pleadings: (1) "[W]hen the facts stated indicate that the party probably has a good cause of action or defense, but that it has been pleaded imperfectly or defectively, and the defects have not been called to his attention by demurrer or by a notice of motion for judgment on the pleadings," and (2) where the defective pleading has been upheld against a general demurrer.

■ In the instant case the proposed amended cross-complaint showed that defendant had a good cause of action but imperfectly pleaded in the original cross-complaint, and the record showed that although imperfectly pleaded that cross-complaint once had been upheld.

The motion to dismiss the appeal is denied. The judgment is reversed with directions to the trial court to grant leave to defendant to file its amended cross-complaint.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied July 25, 1969, and respondents' petition for a hearing by the Supreme Court was denied September 4, 1969.