(July 20, 1921.   No. 2514.)

## NEW MEXICO REALTY CO. v. SECURITY INVESTMENT & DEVELOPMENT CO.

(On Motion for Rehearing Oct. 31, 1921.   Second Motion for Rehearing Denied, Feb. 27, 1922.)

### SYLLABUS BY THE COURT

(1)   As a general rule, in a suit to quiet title, the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of that of his adversary.   P. 667

(2)   Where reliance is placed solely upon paper title, the plaintiff must trace his title to the government or a grantor in possession.   P. 668

(3)   Where both parties trace title to a common source, it is sufficient that the plaintiff connects his title to the common source.   P. 668

#### On Motion for Rehearing.

(4)   A cause of action prosecuted to judgment merges in the judgment and thereafter the judgment, for most purposes, is to be regarded as a new debt; held, that the taxes of 1904 on the land in controversy were extinguished by and merged into the judgment of 1906 and consequently Chapter 65, Laws 1907, remitting penalties and interest where the taxes were paid within a designated time, was without application.   P. 669

(5)   Under chapter 65, Laws 1907, a tender of the delinquent tax amount, including the legally assessed cost of publishing the delinquent tax list, must be made in order to entitle the party to a remission of the penalty imposed for

the nonpayment of taxes, and a tender of an amount less than that required by law is unavailing. P. 672

Appeal from District Court, Santa Fé County; Holloman, Judge.

Suit by the New Mexico Realty Company against James W. Norment and another. Judgment for the plaintiff, and the defendant Security Investment & Development Company appeals. Reversed and remanded upon rehearing, with instructions to set aside the judgment and thereafter to proceed as the parties shall elect.

J. H. Crist and J. W. Norment, both of Santa Fé, for appellant.

Frank W. Clancy, of Santa Fé, for appellee.

OPINION OF THE COURT

PARKER, J. This is a suit to quiet title to a number of lots and a tract of land in Santa Fé county, brought by the New Mexico Realty Company against James W. Norment and the Security Investment & Development Company.

The complaint was in the conventional form. The defendants answered denying the title of plantiff in said property and alleging that the said property was assessed for taxes for the year 1904; that a levy thereon was made; that the taxes became delinquent and a judgment was rendered for the delinquency; that on April 7, 1906, the property was duly sold at tax sale to the county of Santa Fé, duplicate certificate being delivered to James W. Norment on December 5, 1910, and duly recorded; that a tax deed for said property was delivered by said county to Norment on February 11, 1911; that subsequently a suit was brought by Norment against the county of Santa Fé, wherein it was decreed that the title acquired by Norment was a new, independent, and superior and paramount title and extinguished all

other title and liens; that the said decree was affirmed in the Supreme Court of the state, and that on November 25, 1914, Norment conveyed all his right, title, and interest in said premises to the Security Investment & Development Company, Norment disclaiming any right or title in said premises thereafter.

The trial court found that the said property was assessed to Phillip E. Moisson, for the year 1904; that said Moisson then owned said property, and that the tax proceedings mentioned in the answer occurred as alleged therein. It also found that Moisson, through his agent, L. Bradford Prince, on June 28, 1907, tendered to the county treasurer the "exact amount of taxes on said property levied in 1904, that is to say, the sum of $49.59, and said officer refused to accept the same in payment of said taxes." The court concluded as a matter of law that the tender aforesaid was equivalent to actual payment, and consequently the acts of the county in selling the land for alleged delinquent taxes for the year 1904 was illegal and void. From a judgment quieting the title of said property in the plaintiff, the Security Investment & Development Company has perfected this appeal.

The property involved in this suit is fractional lots 31, 32, 33, 34, 35, and 89 and full lots 30, 61, 62, 63, 85, 86, 90, 91, 92, 93, 96, and 97, "map of valuable building lots adjoining the railroad depot, Santa Fé, N. M. 1880," and a tract of land called the "hillside property" in the northern part of the city of Santa Fé. The paper title introduced in evidence by the appellee discloses the following: Warranty deed, William Bradley to Phillip E. Moisson, dated June 1, 1898, for all the lots above described; quitclaim deed of said Moisson to appellee, dated April 10, 1905, for the above-described lots; deed from Manuel Valdez and wife to Phillip E. Moisson, dated

1890, for tract 1 of the Hillside property and deed for tract 2 of said Hillside property from and to same parties, dated 1891. This entire tract was conveyed to appellee by Moisson by deed dated April 10, 1905. From recitations made in some of the foregoing deeds it would appear that on September 25, 1848, Ramon Martinez and wife deeded tract 1 of the Hillside property to Antonio Valdez, and that the grantee thereof was dead at the time Manuel Valdez and wife conveyed the Hillside property to Phillip E. Moisson in 1890 and 1891; that the city of Santa Fé quitclaimed its title in said property by its deed to Moisson, dated 1901, and that said city quitclaimed its title to lots 30 to 35, inclusive, to Moisson May 30, 1901.

It will be observed that the source of title of Ramon Martinez and wife, to the tract numbered 1 of the Hillside property, is not disclosed, nor is the source of title of Manuel Valdez to both tracts of said Hillside property anywhere disclosed. It also appears that the origin of title of William Bradley, as well as the city of Santa Fé, is nowhere disclosed. In other words, the paper title introduced in evidence by appellee to prove its title to the premises fails to show that appellee's mediate or immediate grantors were ever vested with the legal title to this property or to any of it, and the question arises as to whether under such circumstances the appellee, plaintiff below, made out a case entitling it to a decree quieting its title to said premises.

[1] It is settled beyond further controversy in this jurisdiction that as a general rule in a suit to quiet title the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of that of his adversary. Union Land & Grazing Co. v. Arce, 21 N. M. 115, 124, 152 Pac. 1143.

There is no evidence in the record that the plain-

tiff, appellee, or any of its privies, were in possession of the property in dispute. The doctrine laid down in Holthoff v. Freudenthal, 22 N. M. 377, 162 Pac. 173, that possession under a deed from a grantor in possession is sufficient evidence of title to maintain the action, is therefore inapplicable here.

[2] It is a general rule that where reliance is placed solely upon paper title, the plaintiff must trace his title to the government or a grantor in possession. 32 Cyc. 1331; 10 Enc. of L. 484; People's Bank v. West, 67 Miss. 729, 7 South. 513, 8 L. R. A. 727.

In Bauer v. Glos, 236 Ill. 450, 86 N. E. 116, the court said:

"The only evidence of appellee's ownership was a master's deed to Henry Bauer * * * and subsequent deeds from Henry Bauer * * * to Albert Bauer, and from Albert Bauer to appellee. The premises were unoccupied, and there is no evidence of title or possession in appellee or her grantors, or any of the parties to the decree by virtue of which the master's deed was made. A deed for land without proof of possession or title in the grantor is not proof of title in the grantee.'

In Madler v. Kersten, 170 Wis. 424, 175 N. W. 779, the court said that in actions to remove a cloud on title to land, plaintiff not tracing title to the government, proves no title by showing a deed from one not shown to have been in possession of the property. To the same effect is Rockey v. Vieux, 179 Cal. 681, 178 Pac. 712. Numerous cases support this doctrine, but the few cited here will suffice.

[3] A different rule prevails, however, where both parties claim title under a common source. In such cases the rule is that it need not be alleged that the grantor had title, and neither party will be permitted to deny it; it being sufficient if plain-

tiff connects his title with that of the common grantor. 17 Enc. P. & P. 330; Rockey v. Vieux, supra; 32 Cyc. 1331; 5 R. C. L. "Cloud on Title," § 48.

In Eickoff v. Scott, 137 Ark. 170, 208 S. W. 421, the court said:

"Appellees are not in a position to attack appellants' tax title because they trace their title to the same source, and an attack upon appellant's title is in effect an attack on the source of their own title. It is true, in an adversary suit, that the plaintiff must recover on the strength of his own title, and not the weakness of the defendant's title. [Authorities.] This rule is applicable where the parties claim title from independent sources, and has no application where the parties trace their respective titles to a common source. Where the parties trace their title to a common source, the one must prevail who has the superior equity."

See, also, Charles v. White, 214 Mo. 187, 112 S. W. 545, 127 Am. St. Rep. 674, 21 L. R. A. (N. S.) 481; Stephenson v. Austin, 217 Mo. 355, 116 S. W. 1090; Mo. St. Life Ins. Co. v. Russ (Mo. Sup.) 214 S. W. 860; City of Ft. Bragg v. Brandon (Cal. App.) 182 Pac. 454; and Buchannan v. St. L. & M. R. Co., 253 Fed. 698, 703, 165 C. C. A. 292.

As the parties hereto traced their title to a common source, viz., Moisson, the plaintiff below was not obliged to prove title in any predecessor of Moisson. The court found as a fact that Moisson was the owner of the property in 1904, and appellant made no objection thereto. Nor at the close of plaintiff's case in chief did appellant move for a nonsuit upon the ground that the plaintiff was required to prove title beyond the common source.

[4] The appellee proved that in the latter part of June, 1907, Moisson tendered to the county treasurer $49.59 as full payment of taxes levied on the property in 1904; but the tender was refused. From the tax rolls it appears that the land was sold to the

county of Santa Fé on April 7, 1906, for the delinquent taxes of 1904, and that the duplicate certificate of sale was assigned to Norment on December 5, 1910. The judgment against the land for the delinquent taxes of 1904 disclosed that the tax was $49.59, with penalty of $2.48 and advertisement costs of $2.75, and the appellant contends that the tender was bad because not for the full amount of the taxes, penalties, and costs. The solution of the proposition depends upon the construction of chapter 65, Laws 1907. Section 1 of the act provided:

"That all accrued penalties and interest upon taxes now or heretofore in this year delinquent, shall be remitted upon all such taxes which have been or shall be paid on or before the first day of July, A. D. 1907. Provided, however, that in all cases where taxes are now the subject of litigation the time for such payment as aforesaid is extended only to the first day of July, 1907, and if not paid on or before such first day of July, no abatement of interest or penalties shall thereafter be made."

To recapitulate: The taxes were assessed in 1904; became delinquent in 1905; judgment rendered for delinquency January 26, 1906; sold to the county at tax sale on April 7, 1906; tender of "taxes" made in June 1907 and refused, and duplicate certificate of sale assigned to Norment in 1910.

The tax was put in judgment, as heretofore mentioned, and whether the trial court was correct in applying the statute of 1907 with respect to the tender of taxes made by the appellee depends upon whether the judgment merged the "tax" or not. If it did, the statute was without application, because it spoke only to "taxes" as such, and not to judgments which may have been rendered on account of delinquent taxes.

We have found no case in point on this proposition, but the general law of merger applies. In 1 Freeman on Judg. (4th Ed.) it is said:

"The entry of a judgment or decree establishes in the most

conclusive manner and reduces to the most authentic form that which had hitherto been unsettled, and which had, in all probability, depended for its settlement upon destructible and uncertain evidence. The cause of action thus established and permanently attested is said to merge into the judgment establishing it, upon the same principle that a simple contract merges into a specialty. * * * The cause of action, though it may be examined to aid in interpreting the judgment, can never again become the basis of a suit between the same parties. It has lost its vitality; it has expended its force and effect. * * * It 'is drowned in the judgment' and must henceforth be regarded as functus officio." Section 215.

"The weight of authority in the United States shows that whatever may be a cause of action will, if recovered upon, merge into the judgment or decree. * * * It may even be merged by a statutory judgment."

"A person often has the privilege of pursuing either of several forms of action to obtain legal redress for a single wrong. Whenever he resorts to any action in which it is competent for the court to award him full compensation for the wrong of which he complains, and prosecutes such action to final judgment, the wrong merges in the judgment and thereafter there can be no further recovery therefor. * * *" Section 216.

See, also, 15 R. C. L. "Judgments," § 236 et seq.; 23. Cyc. 1108 et seq. In the last-cited work it is said that all the peculiar qualities of the claim are merged in the judgment.

For most purposes the judgment which merges the claim is to be regarded as a new debt. 1 Freeman on Judgments (4th Ed.) § 217; R. C. L. supra § 247; 20 A. & E. Enc. Law, p. 599 et seq.

After the rendition of the judgment against the land in controversy, there were no longer any "taxes" for 1904 due to the state or county chargeable against the land; the judgment superseding the tax, and the amount thereof being ordered realized by a judicial sale of the premises. The act of 1907 was not sufficiently broad to cover the situation existing in the case at bar, and the trial court erred in applying the statute.

For the reasons stated the judgment of the trial

court will be reversed, and the cause remanded, with directions to set aside the judgment and to proceed thereafter as the parties shall elect, and it is so ordered.

ROBERTS, C. J., and RAYNOLDS, J., concur.

On Motion for Rehearing.

PARKER, J.    By motion for rehearing, learned counsel for appellee suggests that the court was in error in holding that the taxes for 1904 were merged by judgment and that chapter 65, Laws 1907, therefore did not apply.

[5]    Counsel states that in contemplation of law all taxes prior to 1906 had been merged in judgments prior to the passage of chapter 65, Laws 1907, so that if the construction placed by the court upon that chapter be correct there could be no room for the operation of the statute, except possibly for the first half of the taxes for 1906. Our attention is called also to section 2 of the act which provided substantially that "all delinquent taxes" for the years 1901 to 1905, inclusive, should be distributed in a certain manner. Counsel contends that a clear legislative intent is disclosed to permit of a payment of taxes, without penalty and interest, whether the amount of such taxes be included in a judgment or not, and on further consideration of the matter we are satisfied that counsel is correct in the contention made.

In the former opinion we did not consider the sufficiency of the tender because it was rendered immaterial by the decision respecting the applicability of chapter 65, Laws 1907, to taxes which had been placed in judgment.

Counsel for appellant argued that the tender of

June 27, 1907, was insufficient because it did not
include any sum imposed as costs. The tender was
for $49.59, the exact amount of taxes levied on the
property for 1904. The rolls for that year showed
the imposition of a penalty of $2.48 on account of
the failure to pay the taxes when due, and section
10, c. 22, Laws 1899, the law in force at the time,
required the taxing authorities to impose that pen-
alty. That sum was, however, remitted by chap-
ter 65, Laws 1907, when its provisions were in-
voked. The additional sum of $2.75, described as
costs of advertising, was charged on the rolls against
said property for said year. The appellant contends
that because the tender did not include that sum it
was bad.

The statute, chapter 65, Laws 1907, provided for
the remission of all "accrued penalties and interest,"
and the question now is whether it was necessary to
pay or tender the amount charged as advertising
costs in order to be relieved under the provisions of
the act.

Under the law of 1899, if taxes were not paid
within 90 days after delinquency, it became the
duty of the collector to publish a delinquent tax list
of owners of property upon which the taxes amount-
ed to not less than $25; the list to state the "amount
of taxes, penalties and costs due." The collector
was required to append to the list and publish a
notice that he would in a time stated apply for judg-
ment against the lands and personal property de-
scribed in the list, "with costs and penalties" and
for an order of sale, and sell said property against
which judgment may be rendered for the taxes, pen-
alties, and costs due. Upon the completion of the
publication and notice, the district attorney was re-
quired to file an omnibus suit against the property
described in the publication, and where judgment
was rendered it was to include the amount stated

in the publication, "together with penalties, interests and costs," and in entering up such judgments the clerk was required to add to the judgment amount a sum equal to 5 per cent. of the amount due, "which five per centum shall be the costs of such proceeding" to be paid over to the court fund of the county. Sections 15, 17, 18, and 20, c. 22, Laws 1899.

It will be observed that the law required the imposition of costs of publication of the delinquent tax list and also the cost of the omnibus suit brought to enforce payment of the tax. The statute fixes the amount of the costs of suit, but does not fix the publication costs.

It therefore appears that the cost of publication of the delinquent tax list became a charge against the property in suit here, unless the statute authorized its remission upon payment of the taxes proper the tender was insufficient.

The word "penalty," as used in the staute, clearly speaks to the arbitrary amount to be added to the tax proper imposed by section 10, c. 22, Laws 1899, as a punishment for failure to pay the tax within the time specified by the statute. This amount is added to the tax and becomes a constituent part of it. Our conclusion with respect to these matters requires no consideration as to the usual meaning attributed to the word penalty.

The word "interest" in the statute was evidently used inadvertently. Prior to 1899, 25 per cent. per annum was added as interest to delinquent taxes. Section 4066, C. L. 1897. So far as we have been able to ascertain, from 1899 to 1913 taxes did not draw interest, although we find the word "interest" appearing in the act of 1899 at several places.

It is elemental that "a tender to be sufficient in

law must be in amount at least equal to the amount due." 26 R. C. L. "Tender," § 20.

Under chapter 65, Laws 1907, a tender of the delinquent tax amount, including the legally assessed cost of publishing the delinquent tax list, must be made in order to entitle the party to a remission of the penalty imposed for the nonpayment of taxes, and a tender of an amount less than that required by law is unavailing.

The judgment of the trial court is therefore reversed, and the cause remanded, with instructions to set aside the judgment and thereafter proceed as the parties shall elect, and,

It is so ordered.

ROBERTS, C. J., and RAYNOLDS, J., concur.