386 P.2d 239

**ROCK ISLAND OIL AND REFINING COMPANY, Inc., a corporation (Successor by merger to Wood River Oil and Refining Company, Inc.), Shoreline Petroleum Corporation, a corporation, and El Paso Natural Gas Company, a Delaware corporation, Plaintiffs-Appellants,**

v.

**D. J. SIMMONS, also sometimes known as David J. Simmons, Thelma Simmons, Wife of D. J. Simmons (David J. Simmons), Defendants-Appellees.**

No. 7271.

Supreme Court of New Mexico.

Oct. 28, 1963.

Seth, Montgomery, Federici & Andrews, Richard S. Morris, Santa Fe, for appellants.

Neal & Matkins, Carlsbad, for appellees.

NOBLE, Justice.

Plaintiffs have appealed from a judgment dismissing their suit to quiet title to claimed equitable interests in the deep rights to oil and gas formations below the Mesa Verde in San Juan County, New Mexico.

After trial of the issues by the court without a jury, findings of fact and conclusions of law were made and a final judgment entered dismissing the complaint. This appeal resulted.

Plaintiffs, Rock Hill Oil Company (hereafter called Rock Hill), Wood River Oil & Refining Company (hereafter referred to as Wood River), Shoreline Petroleum Corporation (hereafter referred to as Shoreline), and El Paso Natural Gas Company (hereafter referred to as El Paso) complain that certain findings are unsupported and that conclusions are erroneous as a matter of law. Complaint is also made that requested findings based on uncontroverted evidence were refused.

While it is true that an equitable interest in real estate may be quieted, Sullivan v. Albuquerque National Trust & Savings Bank, 51 N.M. 456, 188 P.2d 169; McDaniel v. McDaniel, 36 N.M. 335, 15 P.2d 229, it is nevertheless clear that the interest claimed must be an interest in the title. Holthoff v. Freudenthal, 22 N.M. 377, 162 P. 173. Furthermore, a plaintiff in an action to quiet title to real estate must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary's claim. Union Land & Grazing Co. v. Arce, 21 N.M. 115, 152 P. 1143; Abeyta v. Tafoya, 26 N.M. 346, 192 P. 481; New Mexico Realty Co. v. Security Investment & Development Co., 27 N.M. 664, 204 P. 984; Lawson v. Serna, 48 N.M. 299, 150 P.2d 122; Hughes v. Meem, 70 N.M. 122, 371 P.2d 235; Adams v. Benedict, 64 N.M. 234, 327 P.2d 308.

Wood River and Rock Hill owned legal title to an undivided interest in four federal oil and gas leases. Pursuant to a written agreement, they assigned their interest in these leases to El Paso, excepting and reserving an undivided interest in the deep rights below the Mesa Verde formation.

The Bureau of Land Management refused approval of these assignments because of the horizontal separation of rights. The agreement with El Paso was then amended by letter of August 10, 1950, so that Wood River and Rock Hill were to assign the entire leases to El Paso and to receive back from El Paso or its assignees:

"* * * an operating agreement granting to Wood River and Rock Hill all rights in oil, gas and hydrocarbon substances below the Mesa Verde Formation in that acreage to be partitioned as provided in this letter."

The letter granted Rock Hill and Wood River the right to select acreage equal to their undivided interests so that they would be entitled to all of the deep mineral rights in the selected acreage instead of undivided rights in the whole.

Wood River and Rock Hill thereupon assigned the four leases without exception or reservation to John A. Grambling, El Paso's nominee. Pursuant to a farmout agreement from El Paso to defendant Simmons, Grambling assigned the federal leases to Simmons, subject to certain overriding royalties and with the following provision:

"Wood River Oil and Refining Company, Inc. and Rock Hill Oil Company have a contractual right created by said contract of April 18, 1949, as amended, to select and acquire all rights below the Mesa Verde Formation in a partitioned one-half of the above described tracts of land and this assignment is made subject to such right."

These assignments with the above provision were approved by the Bureau of Land Management and were signed by defendant Simmons as assignee. Simmons made several assignments containing provisions similar to that above set out. Wood River and Rock Hill then selected the acreage in which they were to receive the deep rights as provided by the agreement mentioned in the proviso of the assignments. Each of Simmons' assignees have signed a working agreement granting to them the deep rights in the selected acreage but Simmons has refused to sign, and the suit to quiet title followed.

■ The basis of the trial court's judgment dismissing the complaint, and the theory upon which defendants rest their argument, is that rights cannot become vested in a stranger by exception or reservation contained in the assignments of the leases. They assert that plaintiffs' claim to an equitable interest rests solely upon the so-called reservation or exception of the proviso of the assignment. We cannot agree with this theory.

If plaintiffs became invested with an equitable interest in the title to the federal oil and gas leases in issue in this case, it must have been created by the contract

between Wood River and Rock Hill on the one hand and El Paso on the other. Thus, the issue is whether the agreement under which Wood River and Rock Hill assigned their undivided interest to El Paso's nominee and their selection, pursuant to the agreement, of the partitioned area of the deep rights, rises to the level of an equitable interest in the title, or an "equitable ownership."

■ Whether an operating agreement operates as an assignment or conveyance of an interest in the land depends upon the language of the agreement. That such an agreement may constitute an interest in the title was held in Herigstad v. Hardrock Oil Co., 101 Mont. 22, 52 P.2d 171, 174:

> "While the contracts subsequent to the prospecting permit are termed 'operating agreements,' they are, in substance and effect, leases and not mere licenses or contracts of employment. Mere nomenclature is unimportant. 'The test to determine whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises as against all the world, including the owner, in which case it is a lease.' 1 Thompson on Real Property, 761, and cases cited; 35 C.J. 954; 1 Thornton on Law of Oil and Gas, 185 and 210, note 50."

■ It is well settled in New Mexico that an oil and gas lease conveys an interest in real estate. Terry v. Humphreys, 27 N.M. 564, 203 P. 539; 1 Thornton on Oil and Gas, par. 50. By the contract in this case, Wood River and Rock Hill were to receive an operating agreement "granting * * * all rights in oil, gas and hydrocarbon substances * * *." It is clear to us that the expressed intention of the parties was to grant something more than a mere right to prospect for oil and gas. It was more than a mere license and amounted to an assignment of all rights below the Mesa Verde formation. That intention is made even more clear by the reservation in the assignments to Simmons which stated that Wood River and Rock Hill "have a contractual right * * * to select and acquire all rights below the Mesa Verde formation * * *." Compare Blackner v. McDermott, (10th Cir. 1949) 176 F.2d 498; Oldland v. Gray, (10th Cir. 1950) 179 F.2d 408.

After the assignment to Simmons, El Paso stood in the position of a vendor under the contract and Wood River and Rock Hill of a vendee. The title or interest of the vendor and vendee is explained thus in Mesich v. Board of County Commissioners, 46 N.M. 412, 129 P.2d 974:

> "In law the effect of a contract whereby the owner agrees to sell and

another agrees to purchase a designated tract of land, the vendor remains the owner of the legal title to the land; he holds the legal title, 1 Pomeroy's Equity Jurisprudence, § 367. But, in equity the vendee is held to have acquired the property in the land and the vendor as having acquired the property in the price of it. The vendee is looked upon and treated as the owner of the land and the equitable estate thereof as having vested in him. * * The legal title is held by the vendor as a naked trust for the vendee * *."

In Kutz Canon Oil & Gas Co. v. Harr, 56 N.M. 358, 244 P.2d 522, title to an interest created by an operating agreement was quieted.

It does not appear to be disputed that the only obligation imposed upon Wood River and Rock Hill by the contract was their selection of the acreage in accordance with the terms of the letter contract found by the trial court to have been entered into, nor is it disputed that they made selection of the area in accordance therewith. They, therefore, have complied with all the conditions of the letter contract to entitle them to receive the working agreement granting them the deep rights in the selected acreage and are the holders of the equitable title thereto.

■ Furthermore, not only were the assignments of the federal leases to defendant Simmons specifically made subject to the contract rights of Wood River and Rock Hill, but, by signing the assignments as assignee, defendant Simmons admittedly had notice of the terms of such contract, and is chargeable with knowledge thereof. Provencio v. Price, 57 N.M. 40, 253 P.2d 582; Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59; Sinclair Refining Co. v. Clay, 102 F.Supp. 732 (N.D.Ohio 1951). The conclusion that the contract was a continuing obligation which defendants must honor is inescapable. 8 Thompson on Real Property (Perm.Ed.) § 4569; Gaskins v. Walz, 409 Ill. 40, 97 N.E.2d 798; see also Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566.

■ Defendants strongly argue that refusal of the Bureau of Land Management to approve the assignments of the leases with retention by Wood River and Rock Hill of their undivided interest in the deep rights defeats validity of the agreement between El Paso and Wood River and Rock Hill. That cannot be made the basis of denying validity to the agreement because (1) the amended agreement, forming the basis for the equitable title of plaintiffs, was approved by the Bureau of Land Management and (2) defendants are held in a court of equity to the obligation they assumed in accepting the assignment of the

leases. Isaacs v. De Hon, 9 Cir., 11 F.2d 943. See also Herigstad v. Hardrock Oil Co., supra.

Additionally, the rules of the Bureau of Land Management under which the governmental department denied approval of the first assignments tendered were for the protection and benefit of the government only, and thus are not available to an individual. Recovery Oil Co. v. Van Acker, 79 Cal.App.2d 639, 180 P.2d 436, 438. The reasoning is expressed thus in Aronow v. Bishop, 107 Mont. 317, 86 P.2d 644:

"These rules were promulgated for the benefit of the Department of the Interior, and the plaintiff here cannot take advantage of that regulation to defeat the assignments."

It follows that the court was in error in dismissing plaintiff's complaint as to all of the plaintiffs except El Paso which admittedly now has no interest in these leases. The judgment appealed from should be reversed and the cause remanded with instructions to vacate the judgment and proceed in a manner not inconsistent with this opinion.

It is so ordered.

COMPTON, C. J., and MOISE, J., concur.