564 P.2d 992

John H. JACKSON, Jr. and Norma S. Jackson, Plaintiffs-Appellees,

v.

Earl E. HARTLEY and Mary Hartley, Defendants-Appellants.

No. 10980.

Supreme Court of New Mexico.

April 18, 1977.

Earl E. Hartley, Albuquerque, for defendants-appellants.

Lawrence H. Prentice, Los Lunas, for plaintiffs-appellees.

## OPINION

EASLEY, Justice.

On motion of defendants, rehearing was granted. We withdraw the prior decision, and substitute the following.

Until now this case has been poorly pleaded, ineptly tried and badly judged on all issues at all levels, including this one.

Plaintiffs, John H. Jackson, Jr. and Norma S. Jackson (Jackson) filed a quiet-title suit against defendants, Earl H. Hartley

and Mary Hartley (Hartley) and others, including the Property Appraisal Department of the State of New Mexico, seeking to establish title to three lots in Grants, New Mexico. The trial court found for Jackson and Hartley appealed. We reverse the decision of the trial court.

Jackson filed a complaint in conventional form, alleging facts to support a quiet-title suit and including Hartley among those who were allegedly asserting an interest adverse to Jackson. Hartley's answer stated that he had fee-simple title to the property after having acquired title by deed from the State of New Mexico in 1970. Hartley also counterclaimed, stating that plaintiffs had entered into possession of the premises unlawfully, and prayed for an order of ejectment and for damages.

The Property Appraisal Department (Department), moved to dismiss the complaint on jurisdictional grounds as to itself, and moved that Jackson be ordered to file an amended complaint setting forth the purported interest of the Department in the premises. The court issued the requested order in response to the motion and later dismissed the complaint as to the Department when Jackson failed to comply.

The record is skimpy. The parties stipulated to the introduction into evidence of an abstract of title involving the three lots. Jackson called an abstractor as a witness, and elicited from him the fact that Zuni Enterprises, Inc. (Zuni), Hartley's predecessor in title, had had no deed in its name on the records of Valencia County. This is the totality of the legally-admissible evidence at the trial.

The abstract showed that Jackson acquired title to the three lots by deed from the First National Bank in Albuquerque (Bank), which Bank had been designated as trustee in two separate deeds, one from Jack M. Stagner and Virginia Stagner, and one from Jack B. Aldridge and Ina D. Aldridge, both deeds having been recorded in 1961. The beneficiaries of the trust were not named in either of the deeds.

The abstract shows that Hartley's claim is based upon repurchase of the property from the State of New Mexico after the Valencia County treasurer had deeded it to the State on January 20, 1964, because of delinquent taxes for the year 1960. Hartley had obtained a quitclaim deed dated April 10, 1970, from "Zuni Enterprises, Inc." and had recorded it on April 16, 1970.

The abstract reflects that the property was assessed to "Zuni Enterprises" in 1959 and shows that the taxes were paid. Through the years 1960 and 1963 the property was assessed in the name of "Zuni Enterprises" and the tax roll was marked "Repurchased from State 4//70." From 1964 through 1969, the tax roll showed the property in the name of "State of New Mexico . . . Zuni Enterprises" with the roll being marked in the same manner as set forth above regarding the repurchase from the State. From 1970 through 1973 the assessment rolls showed the property to be owned by Earl E. Hartley and indicated that the taxes had been paid in each of those years.

Hartley's deed from Zuni was signed by Jack M. Stagner as Vice President, Stagner being one of the individuals who deeded the property to the Bank as trustee. The name "Zuni Enterprises" appears at another place in the abstract in a notice of suit pending in a street-improvement case filed by the City of Grants against Zuni Enterprises, "a partnership," which partnership included Jack M. Stagner and Virginia L. Stagner, his wife, along with three other couples. The record shows no deed to Zuni as a partnership or as a corporation.

After the abbreviated trial, the court notified the parties by letter that it had decided that the plaintiffs should prevail and that a proper form of judgment should be submitted.

Jackson neglected for a matter of months to submit requested findings and conclusions and a form of judgment. Hartley called the court's attention to the delinquency by letter and submitted a requested judgment and findings and conclusions in his favor, which the trial court adopted and signed. The order was entered, but on motion of Jackson the trial court later vacated

the judgment, stating that it had been inadvertently signed. The court thereafter proceeded to make findings and conclusions in favor of Jackson.

The court found that, in 1960, when the taxes were not paid, the property was assessed in the name of Zuni, but that the Aldridges and the Stagners were the equitable owners, that the two couples deeded the lots to the Bank as trustee in 1961, and that in 1974 the Bank deeded the property to Jackson.

The court concluded that the deed from Zuni to Hartley was void and that the deed from the Department to Hartley was also void because it was obtained from the State as the result of "constructive fraud." It was further concluded that the title to the real estate was vested in the State, subject to the right of Jackson to repurchase under §§ 72–8–31 and 72–8–32, N.M.S.A.1953, as amended.

The final decree (1) adjudged the title to be in the State subject to the right of Jackson to repurchase, (2) barred Hartley from claiming any interest in the land, (3) held Hartley's deeds from Zuni and the State to be void, and (4) ordered Jackson to reimburse the amount paid by Hartley on back taxes in the event the State did not return his money.

The six issues raised by Hartley will be treated in the same order as listed in his brief-in-chief.

■ 1. Hartley contended that he was entitled to have the judgment entered in his favor on February 9, 1976, stand as the final judgment, and that the trial court abused its discretion in vacating that judgment and entering one on behalf of Jackson. We hold that the record does not show an abuse of discretion in this regard, and we affirm the court's decision.

2. It was claimed by Hartley that the trial court erred in concluding that the Zuni deed was void, that the record showed Zuni to have an equitable title in the subject property, and that Zuni had a statutory right to repurchase, which right had been properly assigned to Hartley. It is not nec-

essary or proper for the disposition of this case to settle the question of the validity of Hartley's title. We decline to do so.

3. It was contended by Hartley that there were insufficient facts upon which the trial court could legally have concluded that Zuni never existed and that its deed to Hartley was void. We agree, but the issue is not material to our decision herein.

4. Fraud was not pleaded but was raised over Hartley's claim of surprise in Jackson's opening statement· Hartley alleges error because of the court's legal conclusion that the facts and circumstances indicate as a matter of law that constructive fraud was committed in obtaining the deed from the State of New Mexico. We hold that there is no substantial evidence in the record sufficient to support the conclusion of the trial court that constructive fraud existed in this transaction and we hold there is certainly no grounds to justify a conclusion that constructive fraud existed as a matter of law even under the lenient guidelines set forth in the New Mexico case law. *Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94 (1970); *In re Trigg*, 46 N.M. 96, 121 P.2d 152 (1942); *Barber's Super Markets, Inc. v. Stryker*, 84 N.M. 181, 500 P.2d 1304 (Ct.App.), cert. denied, 84 N.M. 180, 500 P.2d 1303 (1972).

5. The claim is made by Hartley that when the Bank failed to exercise its right to redeem or to repurchase the property prior to the time that Hartley obtained a conveyance, the Bank's subsequent deed to Jackson was null and void. This point is the crux of the dispute between the parties. If the Bank had no right to repurchase the property, then Jackson received nothing by the deed from the Bank in 1974 and has no legitimate right to relief in this cause.

The undisputed facts are that (1) the taxes for the year 1960 were not paid; (2) by tax deed dated January 20, 1964, the Valencia County treasurer conveyed the lots to the State of New Mexico for delinquent taxes for the year 1960; (3) neither Jackson nor anyone in his chain of title made application to the Department to repurchase the property up to April 30, 1970, or since; (4) after Hartley made an applica-

tion to repurchase, the Department deeded the lots to him on April 30, 1970; (5) it was not until January 9, 1974, that Jackson received a deed from the Bank, as trustee.

The right to repurchase property deeded to the State for delinquent taxes is controlled by § 72–8–31, N.M.S.A.1953, which provides that the State shall not convey the acquired property for a period of one year to any person other than one who is entitled to repurchase. It is further provided that the right to repurchase shall continue after the expiration of one year from the date the tax deed to the State has been recorded and until the property acquired is sold at public auction or at private sale.

Jackson attempts to show that Hartley's deed from the Department is void and of no effect and that he would thus be entitled to repurchase the property for the reason that it has not been legally sold. However, Jackson must contend with § 72–8–20, N.M.S.A.1953, which specifies that in all suits involving property held under a deed from the State where the property was acquired from a county treasurer, the party claiming adverse title is required to prove, in order to defeat the title,

> . . . either that the said property was not subject to taxation . . . or that the taxes had been paid before sale by the treasurer to the state, or that the property had been redeemed from the sale according to the provisions of this act, and that such redemption was made or had for the use and benefit of the persons having the right of redemption . . . but no person shall be permitted to question the title acquired by deed from the state without first showing that he, or the person under whom he claims title to the property, had title thereto at the time of sale by the county treasurer; . . . Provided . . . such owner may prove fraud committed by the officer selling . . . or in the purchaser, to defeat the same, and, if fraud is established, such title shall be void.

Another statute that is very material to the resolution of the issues here is § 72–8–21, N.M.S.A.1953, in which it is stated:

> Any actions to test the validity of any proceedings . . . relating to the assessment and collection of delinquent taxes, or proceedings whereby it is sought to avoid any sale under the provision of this act, or irregularity or neglect of any kind of officer having any duty to perform under the provisions hereof, *shall be commenced within two (2) years from the date of the sale* by the county treasurer to the state, and not afterwards. (Emphasis added.)

Jackson's predecessors were bound by this statute to take action to test the validity of the sale to the State by January 20, 1966. They did not do so.

The deed from the Valencia County treasurer of January 20, 1964, stripped the Bank, Zuni, and all other legal and equitable owners of all interest in the lots in question and conveyed a fee-simple title to the State of New Mexico, subject only to the statutory preferential right to repurchase. *Marquez v. Marquez*, 85 N.M. 470, 513 P.2d 713 (1973); *State v. Thomson*, 79 N.M. 748, 449 P.2d 656 (1969); *Hargrove v. Lucas*, 56 N.M. 323, 243 P.2d 623 (1952); *De Baca v. Perea*, 52 N.M. 418, 200 P.2d 715 (1948)· *Alamogordo Improvement Co. v. Hennessee*, 40 N.M. 162, 56 P.2d 1127 (1936).

There are few principles of law in New Mexico that are more firmly established than the one enunciated in *De Baca*, supra, that the former owner's preferential right of repurchase is conditioned on his making application therefor in strict compliance with the statutory provisions and before anyone else has applied. The court in *De Baca* stated (52 N.M. at 420, 200 P.2d at 716):

> In addition to the right to redeem the property before the issuance of a tax deed to the State, the law gives the former owner, or one claiming under him, the first and prior right to repurchase the property from the State after the issuance of a tax deed to it by the county treasurer by complying with the provisions of Section 76–740, 1941 Compilation. This is purely statutory and, if claimed,

must be exercised in the manner and within the time provided by statute or the right is lost. To protect, preserve and enjoy the preferential right to repurchase the land from the State on the most favorable terms authorized by the Act, the former owner, or one claiming under him, must comply with its provisions. He must make application to repurchase and claim the preferential right therein given him before any other application has been made for the repurchase of the land. . . . [T]his does not mean that such owner, or one claiming under him, may delay making his application and offer to repurchase and claim his preferential right until after another has made his for such sale, and then make the offer, assert the right and demand the benefits of a statute with which he has not complied.

In accord are *Armijo v. Via Development Corporation*, 81 N.M. 262, 466 P.2d 108 (1970); *Greene v. Esquibel*, 58 N.M. 429, 272 P.2d 330 (1954); *Belmore v. State Tax Commission*, 56 N.M. 436, 245 P.2d 149 (1952); *Lawson v. McKinney*, 54 N.M. 179, 217 P.2d 258 (1950); and *Turner v. Sanchez*, 50 N.M. 15, 168 P.2d 96 (1946).

█ It is fundamental that Jackson must recover upon the strength of his own title or not at all. *Morris v. Ross*, 58 N.M. 379, 271 P.2d 823 (1954); *Eager v. Belmore*, 53 N.M. 299, 207 P.2d 519 (1949); *N. M. Realty Co. v. Security I. & D. Co.*, 27 N.M. 664, 204 P. 984 (1921); *Union Land and Grazing Co. v. Arce*, 21 N.M. 115, 152 P. 1143 (1915). In *New Mexico Realty*, supra, this court as early as 1921 stated that the above principle "is settled beyond further controversy." Jackson's main effort has been directed toward proving the invalidity of Hartley's title. Such proof is immaterial since Jackson has the burden first to establish his own right to the property.

█ The statutory right to repurchase is not to be considered a vested property right in any event under the New Mexico cases. *State v. Thomson*, supra; *Yates v. Hawkins*, 46 N.M. 249, 126 P.2d 476 (1942); *Hood v. Bond*, 42 N.M. 295, 77 P.2d 180 (1938).

█ This being a quiet-title suit, the interest claimed by Jackson must be an interest in the title. *Rock Island Oil and Refining Company v. Simmons*, 73 N.M. 142, 386 P.2d 239 (1963); *Holthoff v. Freudenthal*, 22 N.M. 377, 162 P. 173 (1916). The variation between the relief prayed for by Jackson and the disposition of the issues made by the trial judge must be noted. Jackson sued to quiet the title in himself. The judgment showed that title was found to be in the State. The relief given Jackson was the right to repurchase under §§ 72–8–31 and 72–8–32, N.M.S.A.1953. Jackson had long since lost that right.

Considering all conceivable theories, it is eminently clear that Jackson has no right whatsoever to the property in question for the reason that neither he nor his predecessors in title took any action to repurchase the lots within the statutory period. Any right that he or his predecessors had was extinguished as of January 20, 1966, which was two years after the Valencia County treasurer issued a tax deed to the State of New Mexico covering the three lots, since Jackson filed no application to repurchase in advance of the one filed by Hartley, did not contest Hartley's deed from the State within the statutory time, and there was no fraud shown which would justify cancellation of the sale to Hartley. Jackson is a stranger to the title and is entitled to no relief.

█ 6. Hartley contends that he is entitled to a decree vesting title in him in fee simple to the lots in question. We hold that he has no right to such relief. His pleadings did not request such relief, but only asked for a decree in ejectment and for damages. There was no proof at all supporting either one of these claimed rights. In any event, since the two claims are not related to the title to the premises, and the suit to quiet title is a statutory proceeding, the counterclaim was not within the purview of the quiet-title statute, § 22–14–1, N.M.S.A.1953. *Lanehart v. Rabb*, 63 N.M. 359, 320 P.2d 374 (1957); *Clark v. Primus*, 62 N.M. 259, 308 P.2d 584 (1957); *Security*

*Investment & Development Co. v. Capital City Bank*, 22 N.M. 469, 164 P. 829 (1917). Furthermore, the issues in the counterclaim were not preserved by proper requests for findings and conclusions and were not properly raised on appeal; thus, they will be considered by this court as having been abandoned by Hartley.

The complaint of Jackson and the counterclaim of Hartley shall be dismissed.

IT IS SO ORDERED.

McMANUS, SOSA and PAYNE, JJ., concur.